**JUDGE'S COPY**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRADY L. DAVIS,

    Plaintiff

    v.

FRANK GILLIS, et al.,

    Defendants

No. 1:CV-00-0543

(Judge Rambo)

(Jury Trial Demanded)

FILED
HARRISBURG, PA

SEP 15 2000

MARY E. D'ANDREA, CLERK
Per _____
    Deputy Clerk

**BRIEF IN SUPPORT OF**
**MOTION TO DISMISS THE COMPLAINT**

**A.**    **Nature of the Action and Parties**

This is a civil rights action brought by Brady L. Davis, a prisoner incarcerated at the State Correctional Institution at Coal Township, Pennsylvania ("SCI-Coal Township"). Davis is proceeding *pro se* to challenge his conditions of confinement at SCI-Coal Township and his sentence calculation pursuant to 42 U.S.C. §1983 ("Section 1983"). Defendants are Superintendent Frank Gillis, Medical Administrator Wilma Sewell, Unit Manager Lee Grover, Counselor C. Custer, Parole Board Chairman William Ward, Parole Supervisor Brian Stout, Records Supervisor Raymond W. Reeder, (collectively "Commonwealth defendants") and Dr. Kort.[1]

**B.**    **Relevant Procedural History**

Plaintiff filed the complaint. Commonwealth defendants have moved to dismiss. This is a brief in support of that motion.

**C.**    **Facts**

---

[1] Dr. Kort is not a Commonwealth employee and therefore is separately represented.

Plaintiff claims that he was kept in prison beyond his maximum date in violation of the due process clause. Complaint ¶¶12-17. Effective October 3, 1991, plaintiff was sentenced in Philadelphia to 3.5 to 7 years in prison for possession of a controlled substance. Ex.[2] 7 ¶4. Therefore, plaintiff's original minimum date was April 3, 1995 and his original maximum date was October 3, 1998. Ex. 7 ¶5. In April 1995, plaintiff was refused parole. Ex. 7 ¶6. In July 1995, plaintiff was released on parole subject to various conditions governing his parole including that he not commit any crimes and, if he is arrested, that he report his arrest to his parole agent immediately. Ex. 7 ¶7.

On September 18, 1997, plaintiff was arrested in Montgomery County for theft by receiving stolen property, unauthorized use of an automobile, fleeing to elude police, and motor vehicle violations. Ex. 7 ¶8. After being released on bail, plaintiff did not report this arrest to his parole agent. Ex. 7 ¶9.

On March 19, 1998, plaintiff entered a guilty plea for receiving stolen property and was sentenced to 6 to 23 months in Montgomery County Correctional Facility effective May 19, 1998. Ex. 7 ¶10. The Montgomery County Court believed that plaintiff was eligible for work release. Ex. 7 ¶11. The Montgomery County Court ordered plaintiff to begin serving his sentence on May 19, 1998. Ex. 7 ¶12.

On May 4, 1998, plaintiff was arrested by a parole agent, who had learned about plaintiff's arrest and conviction in Montgomery County, and was taken to the State Correctional Institution at Graterford. Ex. 7 ¶13. On May 12, 1998, plaintiff received a parole revocation

---

[2]"Ex." refers to the numbered exhibits in the appendix of documents supporting this motion which has been filed simultaneously with this brief.

2

hearing where he was recommitted as a technical and convicted parole violator and was taken to SCI-Coal Township. Ex. 7 ¶14. Because he was imprisoned in the state system, he could not report to serve his sentence in Montgomery County. Ex. 7 ¶15. In June 1998, Montgomery County officials lodged a detainer against plaintiff. Ex. 7 ¶16.

In a Board action recorded on June 5, 1998, plaintiff was recommitted to serve his unexpired term and 9 months concurrently as a technical and convicted parole violator. Ex. 7 ¶17. Because Pennsylvania law requires a convicted parole violator to serve his new sentence first, plaintiff was moved back to Montgomery County to serve his new sentence on October 8, 1998, when SCI-Coal Township officials learned of his Montgomery County sentence. Ex. 7 ¶18. After his new sentence was completed, plaintiff was required to return to the Pennsylvania prison system to serve the remainder of his seven-year term.

By agreement with plaintiff's lawyer, plaintiff received 5 months and 4 days credit toward his state sentence for the period between May 4, 1998, when the Board warrant was lodged, and October 8, 1998, when he was returned to Montgomery County to serve his county sentence. Ex. 7 ¶19.

On March 3, 1999, Montgomery County paroled plaintiff. Ex. 7 ¶20. Because his original maximum date was October 3, 1998, and he had been paroled by the state on July 17, 1995, plaintiff had 3 years 2 months and 16 days remaining on his original maximum sentence. Ex. 7 ¶21. When plaintiff's 5 months 4 day credit from May 4, 1998, to October 8, 1998, was subtracted from 3 years 2 months and 16 days remaining on his state sentence when he was paroled in 1995, 2 years 9 months and 12 days remained on his maximum sentence. Ex. 7 ¶22. When 2 years 9 months and 12 days are added to March 3, 1999, the date of his parole from

3

Montgomery County, his new maximum date became December 15, 2001. Ex. 7 ¶23. Plaintiff's current correct maximum date is December 15, 2001. Ex. 7 ¶24. The reasons for plaintiff's current maximum date have been explained to him. Ex. 7 ¶25.

Plaintiff does not claim that he was denied medical treatment for diabetes. Instead, he claims that his medical treatment was inadequate. Complaint ¶¶22-37. The Department has in place a Consolidated Inmate Grievance Review System. DC-ADM 804 (1994). Exs. 3, 4. After attempted informal resolution of the problem, a prisoner may submit a written grievance to the prison grievance coordinator, may appeal the coordinator's decision to the prison superintendent, and may make a final written appeal to the Central Office Review Committee. Id.

Plaintiff claims that the prison did not give him a favorable recommendation for parole. Complaint ¶17. Plaintiff further claims that, when he returned to SCI-Coal Township, he was placed in "isolation" for thirty days. Complaint ¶20.

D. **Questions Presented**

   I. WHETHER THE COURT SHOULD DISMISS PLAINTIFF'S MEDICAL CLAIMS FOR FAILING TO EXHAUST ADMINISTRATIVE REMEDIES?

   II. WHETHER DISAGREEING WITH MEDICAL TREATMENT FAILS TO STATE A CIVIL RIGHTS VIOLATION?

   III. WHETHER PLAINTIFF RECEIVED ALL THE PROCESS THAT WAS DUE REGARDING HIS SENTENCE CALCULATION?

   IV. WHETHER BEING HOUSED IN ADMINISTRATIVE CUSTODY IS NOT AN ATYPICAL OR SIGNIFICANT HARDSHIP IN THE ORDINARY INCIDENTS OF PRISON LIFE?

V.  WHETHER PLAINTIFF HAS FAILED TO ALLEGE PERSONAL INVOLVEMENT IN ANY UNCONSTITUTIONAL CONDUCT BY DEFENDANTS GILLIS, GROVER, CUSTER, WARD, STOUT, OR REEDER?

VI. WHETHER DENYING A RECOMMENDATION TO PLAINTIFF FOR PAROLE FAILS TO STATE A CONSTITUTIONAL VIOLATION?

VII. WHETHER COMMONWEALTH DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY?

E.  **Argument**

I.  THE COURT SHOULD DISMISS PLAINTIFF'S MEDICAL CLAIMS FOR FAILING TO EXHAUST ADMINISTRATIVE REMEDIES.

Because the medical claims raised by the plaintiff have not been grieved to exhaustion through the Pennsylvania Department of Corrections' ("Department")grievance system, the Court should dismiss those claims. Exs. 4,5,6.

Plaintiff disagreed with his medical treatment for diabetes in May and June 1999 and January 2000. Complaint ¶¶22-37. This is a matter for which plaintiff could have filed a grievance. Ex. 3. All grievances are to be submitted to the Grievance Coordinator, who is Kandis Dascani at SCI-Coal Township. Ex. 5. On May 22, 1999, plaintiff submitted a grievance numbered 0232-99 regarding his medical treatment for diabetes. Exs. 4, 5. On June 6, 1999, the reasons for plaintiff's medical treatment were explained to him in a response to his grievance. Id. Plaintiff did not appeal this response to a higher level. Ex. 5, 6. Plaintiff did not file a grievance for his medical treatment in January 2000. Ex. 5 ¶14. Therefore, plaintiff did not exhaust his administrative remedies with respect to his medical claims.

5

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub.L. No. 104-134, 110 Stat. 1321-71, an inmate is required to exhaust administrative remedies prior to filing suit. The relevant provision reads:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a), as amended.

The Pennsylvania Department of Corrections maintains a prisoner grievance system which permits a prisoner to seek review of problems that he or she experiences during the course of confinement. 37 Pa. Code §93.9(a). The Department has adopted DC-ADM 804, which sets forth the Consolidated Inmate Grievance Review System with procedural rules applicable to prisoner disciplinary proceedings. Ex. 3. The rules are distributed to the plaintiff and he has not complained that the rules were unavailable to him. Ex. 5 ¶¶8,9.

In Nyhuis v. Reno, No. 98-3543, 2000 WL 157531, at *5 (3d Cir. Feb.15, 2000), the Third Circuit stated that "the PLRA amended §1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory — whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action." Id. (See also Booth v. Churner, Nos. 97-7487, 97-7488, 2000 WL 251627, *8 (3d Cir. March 7, 2000)). In Nyhuis and Booth, the Court held that because the prisoner "failed . . . to exhaust [his] administrative remedies (rather than those [he] believed would be effective)" before filing his § 1983 action, the District Court appropriately dismissed his actions. Id. The Court in this case should likewise dismiss plaintiff's medical claims.

6

Plaintiff's failure to comply with 42 U.S.C. §1997e(a) and to exhaust his administrative remedies with respect to the claims in his Complaint warrant dismissal of those claims.

## II. DISAGREEING WITH MEDICAL TREATMENT FAILS TO STATE A CIVIL RIGHTS VIOLATION.

Even if plaintiff had exhausted his administrative remedies with respect to his medical claims, which he has not done, his claim that he was misdiagnosed does not amount to a constitutional violation nor meet the standards for deliberate indifference to a serious medical need.

Plaintiff disagreed with his medical treatment for diabetes in May and June 1999 and January 2000. Complaint ¶¶22-37. "The Eighth Amendment prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.' See Helling v. McKinney, 509 U.S. 25, 32 (1993)." Rouse v. Pantier, 182 F.3d 192, 197 (3rd Cir.1999). To state a civil rights claim, plaintiff "must demonstrate (1) that the defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." Id. (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

Claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." Id. As the Estelle Court noted: "[I]n the medical context, inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" Estelle, 429 U.S. at 105. Even if plaintiff were to state a claim for medical malpractice, that would not constitute a constitutional violation. See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir.1993). In fact, there may be several acceptable ways to treat an illness. See White v.

7

Napoleon, 897 F.2d 103, 110 (3d Cir.1990). "Deliberate indifference," therefore, requires obduracy and wantonness," (Whitley v. Albers, 475 U.S. 312, 319 (1986)), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk (See Farmer v. Brennan, 511 U.S. 825, 842 (1994)). The Supreme Court has stated that "[t]he failure to perform an X-ray or to use additional diagnostic techniques does not constitute cruel and unusual punishment but is at most medical malpractice cognizable in state courts." Estelle, 429 U.S. 104-106.

In Rouse, the Third Circuit gave concrete examples of what would constitute deliberate indifference:

> We have found "deliberate indifference" in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Durmer, 991 F.2d at 68 (citing Monmouth County Correctional Inst. Inmates v. Lunzaro, 834 F.2d 326, 347-47 (3d Cir.1987)). We have also found "deliberate indifference" to exist where the prison official persists in a particular course of treatment "in the face of resultant pain and the risk of permanent injury." Napoleon, 897 F.2d at 109-11 (holding that allegations of several instances of flawed medical treatment state a claim under the Eighth Amendment).

Rouse, 182 F.3d at 197.

In the present case, plaintiff merely disagreed with the medical staff's treatment of his illness. Ex. 4. When asked about it in a grievance, the medical staff gave him a detailed explanation for their course of treatment. Ex. 4. Merely disagreeing with a course of medical treatment does not state a civil rights claim. Therefore, Commonwealth defendants are entitled to judgment as a matter of law on this claim.

### III. PLAINTIFF RECEIVED ALL OF THE PROCESS THAT WAS DUE REGARDING HIS SENTENCE CALCULATION.

Plaintiff claims that he was incarcerated beyond the maximum date on his sentence in violation of the due process clause. Complaint ¶12-21. However, the facts show that plaintiff is scheduled to be released on December 15, 2001, his correct maximum date. Ex. 7 ¶24. Plaintiff has no constitutional right to be released before that time.

Effective October 3, 1991, plaintiff was sentenced in Philadelphia to 3.5 to 7 years in prison for possession of a controlled substance. Ex. 7 ¶4. Therefore, plaintiff's original minimum date was April 3, 1995 and his original maximum date was October 3, 1998. Ex. 7 ¶5. In April 1995, plaintiff was refused parole. Ex. 7 ¶6. In July 1995, plaintiff was released on parole subject to various conditions governing his parole including that he not commit any crimes and, if he is arrested, that he report his arrest to his parole agent immediately. Ex. 7 ¶7.

On September 18, 1997, plaintiff was arrested in Montgomery County for theft by receiving stolen property, unauthorized use of an automobile, fleeing to elude police, and motor vehicle violations. Ex. 7 ¶8. After he was released on bail, plaintiff did not report this arrest to his parole agent. Ex. 7 ¶9.

On March 19, 1998, plaintiff entered a guilty plea for receiving stolen property and was sentenced to 6 to 23 months in Montgomery County Correctional Facility effective May 19, 1998. Ex. 7 ¶10. The Montgomery County Court believed that plaintiff was eligible for work release. Ex. 7 ¶11. The Montgomery County Court ordered plaintiff to begin serving his sentence on May 19, 1998. Ex. 7 ¶12.

On May 4, 1998, plaintiff was arrested by a parole agent, who had learned about plaintiff's arrest and conviction in Montgomery County, and was taken to the State Correctional Institution at Graterford. Ex. 7 ¶13. On May 12, 1998, plaintiff received a parole revocation

9

hearing where he was recommitted as a technical and convicted parole violator and taken to SCI-Coal Township. Ex. 7 ¶14. Because he was imprisoned in the state system, he could not report to serve his sentence in Montgomery County. Ex. 7 ¶15. In June 1998, Montgomery County officials lodged a detainer against plaintiff. Ex. 7 ¶16.

In a Board action recorded on June 5, 1998, plaintiff was recommitted to serve his unexpired term and 9 months concurrently as a technical and convicted parole violator. Ex. 7 ¶17. Because Pennsylvania law requires a convicted parole violator to serve his new sentence first, plaintiff was moved back to Montgomery County to serve his new sentence on October 8, 1998, when SCI-Coal Township officials learned of his Montgomery County sentence. Ex. 7 ¶18. After his new sentence was completed, plaintiff was required to return to the Pennsylvania prison system to serve the remainder of his seven-year term.

> Pennsylvania law states in pertinent part that
>
> [a]ny parolee under the jurisdiction of the [Board] released from any penal institution of the Commonwealth who, during the period of parole or while delinquent on parole, commits any crime punishable by imprisonment, for which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the board, be recommitted as a parole violator. If his recommitment is so ordered, *he shall be reentered to serve the remainder of the term which said parolee would have been compelled to serve had he not been paroled, and he shall be given no credit for the time at liberty on parole.*

The Act of August 6, 1941, P.L. 861, §21.1, added August 24, 1951, P.L. 1401, §5, as amended, (61 P.S. §331.21a(a) (emphasis added)). In accordance with that law, plaintiff was required to serve the remainder of his state sentence. By agreement with plaintiff's lawyer, plaintiff received 5 months and 4 days credit toward his state sentence for the period between May 4, 1998, when the Board warrant was lodged, and October 8, 1998, when he was returned to Montgomery

10

County to serve his county sentence. Ex. 7 ¶19.

On March 3, 1999, Montgomery County paroled plaintiff. Ex. 7 ¶20. Because his original maximum date was October 3, 1998, and he had been paroled from the state on July 17, 1995, plaintiff had 3 years 2 months and 16 days remaining on his original maximum sentence. Ex. 7 ¶21. When plaintiff's 5 months 4 days credit from May 4, 1998, to October 8, 1998, was subtracted from 3 years 2 months and 16 days remaining on his state sentence when he was paroled in 1995, 2 years 9 months and 12 days remained on his maximum sentence. Ex. 7 ¶22. When 2 years 9 months and 12 days are added to March 3, 1999, the date of his parole from Montgomery County, his new maximum date became December 15, 2001. Ex. 7 ¶23. Plaintiff's current correct maximum date is December 15, 2001. Ex. 7 ¶24. The reasons for plaintiff's current maximum date have been explained to him. Ex. 7 ¶25.

The Board has "exclusive power" to parole prisoners who have been sentenced to a maximum term of two years or more in prison. 61 P.S. §331.17. See also Patrick v. Pennsylvania Board of Probation and Parole, 532 A.2d 487, 489 (Pa.Cmwlth.1987); Tillman v. Pennsylvania Board of Probation and Parole, 409 A.2d 949, 950-51 (Pa.Cmwlth 1980). Plaintiff could not have been paroled on October 3, 1998 because he had not served the duration of his sentence before he was arrested and successfully prosecuted for another crime. 61 P.S. §331.21a(a). See also Fleegle v. Pennsylvania Board of Probation and Parole, 532 A.2d 898, 900 (Pa.Cmwlth.1987). See also Patrick, 532 A.2d at 489. Plaintiff was sentenced on March 19, 1998 to six (6) to twenty-three (23) months in county jail for receiving stolen property, an offence committed while on parole from the state. Ex. 6 ¶10. Plaintiff therefore was required to serve the duration of his state sentence after he had completed serving his county sentence. See

11

Fleegle and Patrick, *supra*.

As it stands, plaintiff will be released no later than December 15, 2001 -- his maximum date -- from the state prison system. Therefore, plaintiff has not been incarcerated beyond his maximum date and the Commonwealth defendants are entitled to judgment on this claim.

### IV. BEING HOUSED IN ADMINISTRATIVE CUSTODY IS NOT AN ATYPICAL OR SIGNIFICANT HARDSHIP IN THE ORDINARY INCIDENTS OF PRISON LIFE.

Being placed in administrative custody while incarcerated in prison does not implicate any cognizable liberty interest for a prisoner.

Plaintiff objects to being placed alone in a cell in administrative custody. Complaint ¶20. In Sandin v. Connor, 515 U.S. 472, 484 (1995), the Supreme Court held that a prisoner's assignment to disciplinary segregation did not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." As the Court noted in Griffin v. Vaughn, 112 F.3d 703, 706 (3rd Cir.1997), the "baseline for determining what is 'atypical and significant' -- the 'ordinary incidents of prison life'-- is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."

A prisoner may reasonably expect to be placed in administrative custody, particularly when he has been returned to prison for violating parole by committing a crime. Therefore, plaintiff had no liberty interest in the unit to which the Department assigned him.[3]

---

[3] As Kandis Dascani notes in her declaration, plaintiff never filed a grievance regarding his placement in administrative custody upon his return to SCI-Coal Township. Ex. 5 ¶15. Therefore, alternatively, plaintiff has failed to exhaust his administrative remedy with respect to

12

## V. PLAINTIFF HAS FAILED TO ALLEGE PERSONAL INVOLVEMENT IN ANY UNCONSTITUTIONAL CONDUCT BY DEFENDANTS GILLIS, GROVER, CUSTER, WARD, STOUT, OR REEDER.

Plaintiff has not stated what, if anything, defendants Gillis, Grover, Custer, Ward, Stout, or Reeder did or did not do for him. Therefore, he has failed to state a claim against them.

Liability under Section 1983 is personal in nature and can only follow personal involvement in alleged wrongful conduct, shown through allegations of personal direction or actual knowledge and acquiescence. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Other than the recitation of the defendants in the "Parties" section of the Complaint and the caption, plaintiff does not allege that defendants Gillis, Grover, Custer, Ward, Stout, or Reeder took any improper action or failed to take any action. In fact, none of these defendants is mentioned anywhere else in the Complaint.

Therefore, the Court should dismiss the claims against these defendants.

## VI. DENYING A RECOMMENDATION TO PLAINTIFF FOR PAROLE FAILS TO STATE A CONSTITUTIONAL VIOLATION.

Because plaintiff has no right to parole, his claim that he did not receive a favorable recommendation for parole should be dismissed.

Plaintiff claims that the prison did not give him a favorable recommendation for parole. Complaint ¶17. There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence and, hence, no constitutional right

---

this claim, which entitles defendant to judgment on this claim. See 42 U.S.C. 1997e(a).

13

to parole or pre-release. <u>Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex</u>, 442 U.S. 1, 7 (1979). Additionally, in Pennsylvania, "parole is a matter of grace and mercy shown to a prisoner who has demonstrated to the Board's satisfaction his ability to function as a law abiding member of society." <u>Reider v. Pa. Bd. of Probation and Parole</u>, 514 A.2d 967 (Pa.Cmwlth.1986). Because parole is a matter of grace, its denial cannot be considered to be an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 486.

A unit staff's unfavorable parole recommendation does not infringe any constitutionally-protected interest because Pennsylvania law does confer its inmates with a legally-protected interest in parole eligibility. Therefore, Commonwealth defendants are entitled to judgment on this claim as well.

### VII. COMMONWEALTH DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

By following Pennsylvania law as summarized in the previous sections of this brief, the defendants did not violate any clearly-established law and therefore are entitled to immunity.

Government officials performing discretionary functions are protected from liability for damages where their actions "do[] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Sharrar v. Felsing</u>, 128 F.3d 810, 826 (3rd Cir.1997)(quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

The question of whether a constitutional right has been clearly established is purely a question of law and may be decided even before the commencement of discovery. <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985); see <u>Sharrar</u>, 128 F.3d at 827 (whether the plaintiff alleges a

14

violation of a clearly-established constitutional right is a "threshold question that should be decided expeditiously . . ."); and Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam) (immunity ordinarily should be decided by the court long before trial).

In addition, even where a constitutional right has been clearly established, a government official may be entitled to qualified immunity where a reasonable official "could have believed that his or her conduct was lawful, in light of clearly established law and the information in the [official's] possession." Sharrar, 128 F.3d at 826 (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam) and Anderson v. Creighton, 483 U.S. 635, 641 (1987)). Under this standard, government officials who reasonably but mistakenly conclude that their conduct is lawful are entitled to immunity. Sharrar, 128 F.3d at 826; Hunter, 502 U.S. at 227. Thus, "the qualified immunity standard 'gives ample room for mistaken judgments by protecting' all but the 'incompetent or those who knowingly violate the law.'" Hunter, 502 U.S. at 229 (quoting Malley v. Briggs, 175 U.S. 335, 341 (1986)); accord Sharrar, 128 F.3d at 826.

In the present case, prison medical staff relied on cases cited in this brief which show that the U.S. Constitution is not violated merely by disagreeing over medical procedures. Moreover, Commonwealth defendants relied on aforementioned Pennsylvania law and cases for considering parole and calculating maximum dates. See Patrick and Tillman, *supra*. In addition, the Board defendants also relied on sound advice from their legal counsel. Ex. 7 ¶¶19-25. Therefore, the Commonwealth defendants in this case are entitled to qualified immunity because they had every legitimate reason to believe that their conduct was lawful.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint.

15

                        Respectfully submitted,

                        D. MICHAEL FISHER
                        Attorney General

BY:      _____
            MICHAEL A. FARNAN
            Deputy Attorney General

            SUSAN J. FORNEY
            Chief Deputy Attorney General
            Litigation Section

            Counsel for COMMONWEALTH DEFENDANTS

Office of Attorney General
15th Fl., Strawberry Square
Harrisburg, PA 17120
(717) 787-7369

DATE:   September 15, 2000

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADY L. DAVIS, | : |
| Plaintiff | : |
| | : No. 1:CV-00-0543 |
| v. | : |
| | : (Judge Rambo) |
| FRANK GILLIS, et al., | : |
| | : (Jury Trial Demanded) |
| Defendants | : |

### CERTIFICATE OF SERVICE

I, MICHAEL A. FARNAN, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on September 15, 2000, I caused to be served a true and correct copy of the foregoing document entitled Brief in Support of Motion to Dismiss the Complaint by depositing same in the United States Mail, first-class postage prepaid to the following:

Brady L. Davis, BX-3685
SCI-Coal Township
1 Kelley Drive
Coal Township, PA 17866

_____
MICHAEL A. FARNAN
Deputy Attorney General

Date: September 15, 2000

17