

Law Clerk's Copy

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

---

## No. 1:CV-00-0543

---

**BRADY L. DAVIS**

**Plaintiff**

v.

**FRANK GILLIS, et al.**

**Defendants**

---

## APPENDIX

---

FILED
HARRISBURG, PA

SEP 15 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

Respectfully submitted,

**D. MICHAEL FISHER**
Attorney General

**MICHAEL A. FARNAN**
Deputy Attorney General

**SUSAN FORNEY**
Chief Deputy Attorney General
Litigation Section

**Office of Attorney General**
**15th Fl., Strawberry Square**
**Harrisburg, PA 17120**
**Direct: (717) 787-7369**
**Date: September 15, 2000**

## **TABLE OF CONTENTS**

DC ADM 801 ................................................... Ex. 1

DC ADM 802 ................................................... Ex. 2

DC ADM 804 ................................................... Ex. 3

Grievance 0232-99 ............................................. Ex. 4

Declaration of Kandis Dascani ................................. Ex. 5

Declaration of Robert Bitner .................................. Ex. 6

Declaration of Charles A. Meyers .............................. Ex. 7



EXHIBIT 1



**POLICY STATEMENT**

**Commonwealth of Pennsylvania ● Department of Corrections**

| Policy Subject: | INMATE DISCIPLINARY AND RESTRICTED HOUSING PROCEDURES (DC-ADM 801) | Policy Number: DC-ADM 801 |
|---|---|---|
| Date of Issue: May 20, 1994 | Authority: | Effective Date: Sept. 20, 1994 |

## I. Authority

The authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901 (b) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, 175, as amended.

## II. Purpose

A consistently applied system of sanctions in response to inmate violations of Department of Corrections rules and regulations is established to ensure the safe and orderly operation of institutions and Community Corrections Facilities.

## III. Applicability

This policy shall be applicable to all inmates and staff in all Department of Corrections' facilities and Community Corrections Centers.

## IV. Definitions

For the purpose of this policy, the following definitions shall apply:

A. Central Office Review Committee (CORC) - A panel of at least three (3) Central Office staff members appointed by the Commissioner, including an attorney from the Office of Chief Counsel, which conducts final reviews of institution grievance and misconduct appeals.

B. Disciplinary Custody - The maximum restrictive status of confinement to which inmates guilty of Class I misconducts may be committed. Inmates shall be placed in disciplinary custody status for periods no longer than ninety (90) days per misconduct report.

C. Hearing Examiner - An employe of the Department of Corrections Central Office who conducts inmate misconducts hearings. The hearing examiner reviews evidence, determines relevance of witnesses, interviews witnesses, determines guilt or innocence, and imposes sanctions consistent with this policy.

D. Misconduct - Any violation of Department of Corrections Rules, Regulations or Policies as outlined in Section VI of this policy.

E. Pre-Hearing Confinement - A temporary administrative status of confinement in the inmate's general population cell or the RHU pending the outcome of a misconduct hearing.

DC-ADM 801

F. Program Review Committee - A panel of three (3) members consisting of the two (2) Deputy Superintendents, Inmate Program Manager, or Unit Manager. The Superintendent may designate appropriate substitutes. The Program Review Committee conducts Administrative Custody hearings, thirty (30) day reviews, makes decisions about continued confinement in the RHU/SMU, and hears all appeals of misconducts.

G. Restricted Housing Unit - An area or group of cells for inmates assigned to disciplinary or administrative custody status.

H. Special Management Unit - (SMU) A special unit within designated Department of Corrections institutions designated to safely and humanely handle inmates whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates, or him or herself.

I. Mental Health Cases - Inmates who have a mental health stability score of 3 or above, are listed on the institution's Psychiatric Review Team roster, or in the opinion of the staff, may be suffering from a serious mental illness.

## V. Policy

It is the policy of the Department of Corrections to operate a disciplinary process which provides clear notice of prohibited behavior, outlines a fundamentally fair hearing process, and establishes consistent sanctions for violations of Department of Corrections rules and regulations.

## VI. Procedure

All inmates under the jurisdiction of the Department of Corrections are expected to follow the rules and regulations. This section provides a list of prohibited behavior which can result in misconduct charges, the misconduct hearing procedures, and the appeal procedures.

### A. Misconduct Charges

Class I Charges Category A

1. Violation of the PA Crimes Code (must be specified)

| 1.a. | Assault - Including any aggressive physical contact with a potential for injury towards an employe. | | |
|---|---|---|---|
| 1.b. | Murder | 1.i. | Kidnapping |
| 1.c. | Rape | 1.j. | Aggravated Assault |
| 1.d. | Arson | 1.k. | Voluntary Manslaughter |
| 1.e. | Riot | 1.l. | Extortion by Threat of Violence |
| 1.f. | Escape | 1.m. | Involuntary Deviate Sexual Intercourse |
| 1.g. | Robbery | 1.n. | Threatening an Employe or Their Family |
| 1.h. | Burglary | | with Bodily Harm |

Class I Charges Category B

2. Fighting.
3. Threatening another person.
4. Engaging in sexual acts with others, or sodomy.
5. Wearing a disguise or mask.
6. Failure to report an arrest for any violation of the Pennsylvania Crimes Code (Community Corrections Centers only).
7. Refusing to obey an order.
8. Possession of contraband including money, implements of escape, unprescribed drugs or drugs which are prescribed, but the inmate is not authorized to possess, drug paraphernalia,

DC-ADM 801

poisons, intoxicants, materials used for fermentation, property of another, weapons or other items which in the hands of an inmate present a threat to self, others or to the security of the institution. When an inmate is charged under this section with possession of an item of contraband which is a weapon or item which in his hands presents a threat to others or to the security of the institution, and the item also has a legitimate use in the area discovered, credible evidence that the item has been used only for the legitimate purpose shall be considered to mitigate the misconduct to a Class II.

9. Possession, or use of a dangerous or controlled substance.
10. Possession, or use, of intoxicating beverages.
11. Extortion, or blackmail.
12. Any violation of the Pennsylvania Crimes Code not in Category I (must be specified).

Class I Charges Category C

13. Tattooing, or other forms of self mutilation.
14. Destroying, altering, tampering with, or damaging property.
15. Indecent exposure.
16. Engaging in, or encouraging unauthorized group activity.
17. Refusing to work, or encouraging others to refuse to work.
18. Breaking restriction or quarantine.
19. Gambling or conducting a gambling operation.
20. Unauthorized use of the mail or telephone.
21. Possession or circulation of a petition, which is a document signed by two or more persons requesting or demanding that something happen or not happen, without the authorization of the Superintendent.
22. Using abusive or obscene language to an employe.

Class I Charges Category D

23. Failure to stand count or interference with count.
24. Violating a condition of a pre-release program (must be specified).
25. Violation of visiting regulations (must be specified).
26. Lying to an employe.
27. Presence in an unauthorized area.
28. Loaning or borrowing property.
29. Failure to report the presence of contraband.

Class II Charges

30. Body punching, or horse play.
31. Taking unauthorized food from the dining room or kitchen.
32. Failure to report to work, or unexcused absence from work.
33. Smoking where prohibited.
34. Possession of any item not authorized for retention or receipt by the inmate not specifically enumerated as Class I contraband.
35. Any violation of a rule or regulation in the Inmate Handbook not specified as a Class I misconduct charge.

**B.** Any attempt to commit any of the above listed charges shall constitute a misconduct of the same classification as the completed act would be.

**C. Misconduct Sanctions**

1. Misconduct sanctions shall be imposed by the hearing examiner.

2. Inmates found guilty of Class I misconduct charges may be subject to any one or more of the following sanctions:

   a. Assignment to disciplinary custody status for a period not to exceed ninety (90) days per misconduct report.

DC-ADM 801

    b. Cell restriction for a period not to exceed thirty (30) days per misconduct report. Cell restriction is total confinement to general population cell, dorm area or cubicle, except for meals showers, one (1) formal religious service per week, commissary, law library and one (1) specified daily exercise period. Participation in programs, school, and work are suspended.

    c. Loss of privileges for a prescribed period of time. Privileges lost must be specifically identified and should, where possible, be related to the misconduct violation.

    d. Payment of fair value for property lost or damaged or for expenses incurred as a result of the misconduct.

    e. Reprimand, warning, counselling.

    f. Suspension or removal from job.

    g. Confiscation of contraband.

    h. Revocation of pre-release status.

3. The hearing examiner may reduce the classification of any Class I misconduct (except Category A charges) to a Class II misconduct.

4 . Inmates found guilty of Class II misconduct charges are subject to one or more of the above sanctions except placement in disciplinary status, cell restriction, change of custody level, and loss of pre-release status. The only permissible sanction for Class II category contraband is confiscation of the contraband.

5. Presumptive range of misconduct sanctions.

    <u>Class I Charges Category A</u>
    No less than 30 days disciplinary custody status
    No more than 90 days disciplinary custody status

    <u>Class I Charges Category B</u>
    No less than 30 days cell restriction
    No more than 60 days disciplinary custody status

    <u>Class I Charges Category  C</u>
    No less than 15 days cell restriction
    No more than 30 days disciplinary custody status

    <u>Class I Charges Category D</u>
    No less than 15 days loss of privileges
    No more than 15 days disciplinary custody status

    <u>Class II Charges</u>
    No less than 5 days loss of privileges
    No more than 15 days loss of privileges

The hearing examiner will have the authority to impose a term which deviates from the presumptive sanctioning range (except in cases of bodily harm or injury). If the hearing examiner does vary from the presumptive range, the rationale for the exception must be documented as part of the record of the hearing.

6. Time given for misconducts involving bodily injury, and attempt to commit bodily injury, or use of a weapon will be served in its entirety. For other misconducts, the Program Review Committee may consider a release to general population upon completion of half of the sanction imposed.

DC-ADM 801

The Superintendent or PRC may change an inmate from DC status to AC status only upon expiration of the DC sanction and only if proper notice and hearing procedures are provided as outlined in DC-ADM 802.

7. At any time, the Superintendent or designee may reduce the disciplinary sanction imposed on any inmate other than those with misconducts involving bodily injury, attempts to commit bodily injury or use of a weapon, based on the security needs of the institution in accordance with the "Administration of the Restricted Housing Unit" policy. When this occurs, the Superintendent shall notify the Regional Deputy Commissioner via Weekly Status Report.

8. In cases of multiple misconduct sanctions, the Superintendent may reduce the total amount of disciplinary time based upon positive adjustment by the inmate. Disciplinary time cannot be reduced beyond the longest sanction imposed per misconduct report for Category A charges or half of the longest sanction imposed for other category charges.

9. The PRC or the superintendent will have the discretion to reduce disciplinary sanctions for mental health cases.

**D.  RHU Procedures for Disciplinary Custody Status Inmates**

1. Disciplinary custody status inmates are housed in separate cells  from general population and administrative custody status inmates.

2 . Smoking in the disciplinary custody status housing area will be limited to one pack of cigarettes every two (2) weeks, to be purchased from the institution commissary. Indigent inmates may be provided with cigarettes consistent with policy 15.3.6, VI. D., Smoking in Department of Corrections Buildings and Facilities.

3. Inmates in disciplinary custody status will not have the privileges of radios, televisions, telephone calls, personal property or commissary (except cigarettes toilet articles, legal/correspondence materials, and prescribed medications).

4. Visits are limited to one (1) non-contact visit per month with immediate family only. Legal visits will be permitted. In cases of emergencies, a telephone call may be approved by the Unit Manager or a Commissioned Officer.

5. Disciplinary custody status inmates will be permitted legal materials that may be contained in one (1) records center box. Any additional legal material will be stored and available upon request on an even exchange basis. A personal Bible, a Holy Koran, or equivalent religious publication is permitted.

6. Inmates will be provided access to the institution law library by requesting legal materials in accordance with Departmental policy. Other library books may be requested on a weekly basis.

7. Inmates in disciplinary custody status will be provided with an R.H.U. jumpsuit and footwear. Basic issue toilet articles will be provided on request. Two (2) pair of personal undergarments are permitted. No other personal property is permitted. Outerwear for exercise will be provided as needed.

8. Disciplinary custody status inmates will receive one (1) hour exercise per day, five (5) days per week, and shall be permitted a minimum of three (3) showers and three (3) shaves per week.

9. The Program Review Committee will interview all disciplinary custody cases every thirty (30) days.

DC-ADM 801

**E. Misconduct Reports**

1. Inmates charged with any of the listed violations will receive a misconduct report.

2. Content of the Misconduct Report - The misconduct report is used to give notice to the inmate of the conduct violations with which he/she has been charged and the facts upon which the charges are based. The misconduct report will be used as evidence against the inmate at the misconduct hearing.

3. Charging Staff Member - The misconduct report shall be written by a staff member who has personal knowledge of the misconduct violation or by a staff member at the direction of a person who has personal knowledge of the misconduct.

4. Time of Writing of the Misconduct Report - The misconduct report should be written the same day/shift that the charging staff member has knowledge of the incident. If not, the misconduct report must include a justification for the delay.

5. Approval by Ranking Officer on Duty - Prior to service of the misconduct report on the inmate, the report shall be reviewed and approved by the shift commander. Pre-hearing confinement is not to be routine but utilized only upon approval of the shift commander based on an assessment of the incident and the need for control.

**F. Service of Misconduct Report**

1. The inmate shall be personally served with the misconduct report within a reasonable time after it is written.

2. If an inmate is placed in pre-hearing confinement, the misconduct report shall be served within three (3) hours of the inmate's placement in pre-hearing confinement. If the inmate is not placed in pre-hearing confinement, notice shall be served the same day the misconduct report is written.

3. The misconduct report will, except at Community Corrections Centers, be served by someone other than the charging staff member.

4. The staff member who serves the misconduct shall record the date and time of service on the misconduct report immediately prior to giving the inmate a copy of the misconduct report.

5. The Witness Request form and the Inmate Version form shall be delivered to the charged inmate with the misconduct report. The inmate must fill out the Witness Request form and submit it to the block officer or Community Corrections Center staff member no later than 9:00 a.m. the next working day. The block officer shall sign the Witness Request form, give a copy to the inmate, and forward the form to the hearing examiner. The inmate should bring the Inmate Version form to the hearing.

**G. Misconduct Hearing**

1. Scheduling - The misconduct hearing shall be scheduled no less than twenty four (24) hours nor more than six (6) calendar days after notice of the charges is served.

2. The misconduct hearing shall be conducted by a Department of Corrections' hearing examiner.

3. Inmate Assistance

   a. The inmate shall be permitted assistance at the hearing from any staff member or any inmate in general population status. The assistant must be willing to serve.

   b. The inmate shall be permitted to meet with the assistant an appropriate period of time before the hearing.

DC-ADM 801

4. Inmate Version - At the hearing, the charges will be read to the inmate. The hearing examiner will request the inmate's plea to each individual charge. The inmate may submit a written version or may orally present his or her version which shall be summarized as part of the record of the hearing.

5. Witnesses

   a. The hearing examiner may require the presence of any staff member or witness.

   b. Up to three (3) relevant witnesses, who have been properly requested, shall be permitted. One of the three witnesses may be the staff member who witnessed the misconduct violation, or the charging staff member.

      (1) Relevance - The inmate must state on the Witness Request form why the witness is relevant to the hearing. The witness must be a staff member, official volunteer, contract employee, or an inmate, unless the hearing is conducted at a Community Corrections Facility, where civilian witnesses may be permitted.

      (2) Availability - If the inmate properly requests a witness who is not available at the time of the hearing, the inmate may elect to either waive the six (6) calendar days hearing requirement or to have the witness execute a written statement under oath which will be presented in lieu of live testimony. If the inmate elects to have the witness present, the hearing will be rescheduled at the earliest practical time after the witness is available.

      (3) If an inmate witness or assistant becomes disruptive at the hearing, he or she will be removed.

   c. The hearing examiner may question any witness. The charged inmate shall be permitted a reasonable opportunity to pose relevant questions for any adverse witness to respond to. The extent of questioning shall be controlled by the hearing examiner.

   d. Determinations of credibility shall be made by the hearing examiner.

   e. All testimony shall be under oath.

   f. If the inmate elects to plead guilty or waive his/her right to a hearing, no witnesses will be required.

6. Confidential Source of Information - When the misconduct report is based upon information supplied by a confidential informant, the following procedure shall be followed:

   a. An in-camera hearing (without the charged inmate present) will be conducted to determine the reliability of the informant. The informant must be established as reliable by a preponderance of evidence showing:

      (1) How, where and when the informant was in a position to observe the violation or gain personal knowledge of the violation.

      (2) What other witnesses have corroborated the informants statement and how, or how and when the informant gave reliable information in the past.

   b. The information provided by the informant, but not the identity of the informant will be disclosed to the charged inmate during the hearing. The charged inmate will have the opportunity to respond to the facts presented in the informant's statement.

   c. In cases where the information provided by the informant could by itself reveal the identity of the informant, the examiner may withhold identifying information from the charged inmate.

DC-ADM 801

## H. Disposition of Charges

1. As soon as possible after hearing all evidence, but within the six (6) calendar day limit, the hearing examiner shall determine whether the inmate is guilty of the misconduct charges based upon a preponderance of the evidence, that it is more likely than not that the inmate committed the misconduct charge or charges.

2. After the decision is reached by the examiner, the inmate shall be called before the examiner to hear the decision.

3. If the inmate is found not guilty, that fact shall be recorded in writing. The inmate shall be given a copy. No rationale for the decision is required. All record of the misconduct shall be removed from the inmate's institution file and retained in a separate institution file until the inmate is released or transferred.

4. If the inmate is found guilty, a written summary of the hearing will be prepared which will include the facts relied upon by the hearing examiner to reach the decision, and the reasons for the decision. The summary shall also include findings of fact concerning the testimony of each witness presented. A copy of the written summary will be given to the inmate. The inmate shall be advised that he/she has fifteen (15) days to submit a written request for appeal to the Program Review Committee.

5. The hearing examiner may dismiss any misconduct report without prejudice, to permit recharge without determination of guilt or innocence.

## I. Appeals

1. First Level of Appeal - Program Review Committee

   a. Any inmate who has been found guilty of a misconduct charge or charges may appeal to the Program Review Committee for initial review within fifteen (15) days of the hearing. The three (3) valid bases for an appeal to the Program Review Committee are:

      (1) The procedures employed were contrary to law, this policy or the I.C.U. Consent Decree.

      (2) The punishment is disproportionate to the offense. Sanctions imposed outside of the presumptive sentencing range may be appealed on this basis.

      (3) The findings of fact were insufficient to support the decision.

   b. No appeals from a finding of not guilty are permitted.

   c. All appeals shall be in writing. Only one ( 1 ) appeal to the Program Review Committee shall be permitted in the case of each misconduct report.

   d. Any inmate may seek the assistance of a staff member or an inmate in the same population status in the preparation of an appeal. The inmate appellant must sign the appeal.

   e. The appeal shall include a brief statement of the facts relevant to the appeal. The text must be legible and presented in a courteous manner. The inmate may state any claims concerning alleged violations of Department Directives and Regulations or the I.C.U. Consent Decree, or other law.

   f. The Program Review Committee will address each issue raised by the inmate, and may, at its discretion, consider any other matter relevant to the issues raised. The Program Review Committee is not required to address issues not raised or improperly raised by the appellant.

DC-ADM 801

    g. The Program Review Committee shall have the power to:

        (1) Reject any appeal which does not conform to Sections a. through f. above.
        (2) Uphold the hearing examiner's decision.
        (3) Uphold the finding of guilt, but modify the punishment.
        (4) Vacate the decision and remand back to the hearing examiner for a rehearing.
        (5) Vacate the decision and the charge to permit recharge and rehearing.
        (6) Dismiss the charge and prohibit recharge.
        (7) The Program Review Committee may not impose a greater punishment than has been designated by the hearing examiner. The Program Review Committee will provide a brief written statement to the inmate of the reasons for its decision within five (5) working days of receipt of an appeal.

2. Second Level of Appeal - <u>Superintendent</u>

    a. The inmate may appeal the decision of the Program Review Committee to the Superintendent within five (5) days of receipt of the written P.R.C. decision.

    b. The Superintendent will address all issues raised by the inmate and may, at his/her discretion, consider any other matter relevant to the issues raised. He/she is not required to address issues not raised or improperly raised by the appellant.

    c. The Superintendent may make any decision permitted to the Program Review Committee. The decision of the Superintendent will be in writing and will be forwarded to the inmate within three (3) working days of receipt of the appeal. Any day that the Superintendent is absent from the institution will not be included in the three (3) working days.

3. Final Appeal - <u>Office of Chief Counsel</u>

    a. The inmate may appeal the decision of the Superintendent to the Office of Chief Counsel within seven (7) calendar days of receipt of the Superintendent's decision.

    b. An attorney will review the issues of appeal and the complete record of the hearing and previous appeals. The attorney may respond directly to the inmate or refer the appeal to the Central Office Review Committee (CORC) for further review. A final decision will be provided to the inmate within twenty-one (21) days of receipt of the appeal to final review.

    c. The attorney will address all issues properly raised by the inmate and may review any other matter relevant to the issues raised and may affirm, modify, reverse, or take other appropriate action with regard to the appeal.

## J. Waivers

1. An inmate may voluntarily waive the hearing process outlined in this policy at any time prior to the hearing's completion. The inmate may also waive any witness requests or time limitations relating to the hearing or service of notice.

2. All waivers shall be in writing and shall be signed by the charged inmate.

## K. Inmate Refusal to Attend the Hearing

1. Inmates who refuse to attend a hearing will be advised they have a right to a hearing but may waive that right. The inmate will be asked to sign the waiver.

2. If the inmate refuses to attend the hearing or sign a waiver, two (2) staff members who witnessed the refusal will sign the waiver form. The hearing will be conducted without the charged inmate present. The hearing examiner will determine guilt or innocence, and a sanction will be imposed if the inmate is found guilty.

DC-ADM 801

3. The inmate may appeal the results of a hearing he/she refuses to attend in accordance with Section I above.

**L.  Inmate Unable to Attend**

If the inmate is physically or mentally unable to attend or participate in a hearing, the hearing examiner shall postpone the hearing until the inmate is able to attend and participate. The decision to postpone a hearing under this section shall be in writing and shall be made at the time the hearing would have been held.

**M.  Community Corrections**

1. Definitions

   a. Center Director - The Director of the Community Corrections Center or the authorized designee of the Director.

   b. Regional Director  -  The Director of the region in which a Community Corrections Center is located.

   c. Hearing Committee  -  The persons designated by the Center Director to conduct misconduct hearings at the Community Corrections Center.

      (1)  The Committee shall be impartial and shall consist of at least one staff member but no more than three staff members.

      (2)  The Committee shall perform the functions performed by hearing examiners as outlined in this directive.

2. Procedures

   a. Misconduct hearings held at a Community  Corrections Facility  will be heard by a hearing committee.

   b. If a Community Corrections inmate is placed in pre-hearing confinement, the misconduct report shall be served within 48 hours of the inmate's placement in prehearing confinement.

   c. If a Community Correction's inmate is returned to an institution under pre-hearing confinement, the hearing will be conducted at the institution by a hearing examiner.

   d. Misconduct reports will be processed and hearings conducted as outlined in Section VI of this policy.

   e. Appeals

      (1)  If the inmate has been permanently returned to an institution appeals may be filed in accordance with Section I of this directive.

      (2)  Inmates remaining at a Community Corrections Facility may appeal misconduct hearing results to the Director, Community Corrections, Bureau of Community Corrections, P. O. Box 598, Camp Hill, Pennsylvania 17001-0598.

**VII. Suspensions During an Emergency**

In an extended emergency situation or extended disruption of normal institution operation, any provision or section of this policy may be suspended upon approval of the Commissioner of Corrections.

DC-ADM 801

## VIII. Rights Under this Directive

This directive sets out policy and procedure. It does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. The directive should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the directives and policies of the Department of Corrections.

## IX. Superseded Policy and Cross-Reference

This policy supersedes DC-ADM 801 dated October 29, 1992.

**Policy Manual Cross-Reference** - DC-ADM 802, DC-ADM 804

**ACA Cross References** - 3-4214 through 3-4236, 3-4250, 3-4254, and 3-4260.

Joseph Lehman
Commissioner



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Policy Subject: |
|---|---|
| **Superintendents**<br>**Boot Camp Commander**<br>**Bureau Directors** | **DC-ADM 801**<br>**INMATE DISCIPLINARY AND RESTRICTED**<br>**HOUSING PROCEDURES** |

| Policy Number: | **DC-ADM 801-1** |
|---|---|
| Policy Issue Date | **MAY 20, 1994** |

| Date of Issue:<br>April 10, 1995 | Authority: | Effective Date:<br>April 10, 1995 |
|---|---|---|

Administrative Directive 801, Section VI D.3, limits visits to one (1) non contact visit per month with immediate family only. It also indicates that legal visits will be permitted. Religious advisors are not, however, addressed in the policy.

This bulletin amends Section VI D.3, to <u>permit visits</u> from religious advisors, in accordance with Administrative Directive 812, for those inmates who are in Disciplinary Custody status.

cc:   Executive Deputy Clymer
      Regional Deputies



**Bulletin**

**Commonwealth of Pennsylvania ● Department of Corrections**

| To: | Policy Subject: |
|---|---|
| **Superintendents**<br>**Boot Camp Commander**<br>**Executive Staff**<br>**Regional Directors** | **DC-ADM 801**<br>**INMATE DISCIPLINARY AND RESTRICTED**<br>**HOUSING PROCEDURES** |

| Policy Number: | **DC-ADM 801-2** |
|---|---|
| Policy Issue Date | **MAY 20, 1994** |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| August 16, 1995 | *Raymond Clymer Jr.* | August 16, 1995 |

Section VI.D.5, **RHU Procedures for Disciplinary Custody Status Inmates,** is amended by this Bulletin to allow inmates to maintain **religious,** as well as legal materials, in one (1) records center box.



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Policy Subject: |
|---|---|
| **Executive Staff**<br>**Superintendents**<br>**Regional Directors** | **DC-ADM Inmate Disciplinary and Restricted**<br>**Housing Procedures** |

| Policy Number: | **DC-ADM 801-3** |
|---|---|
| Policy Issue Date | **MAY 20, 1994** |

| Date of Issue:<br>February 12, 1997 | Authority: | Effective Date:<br>April 14, 1997 |
|---|---|---|

The revised DC-ADM 816, Inmate Compensation Policy includes language which mandates that any employed inmate found guilty of a Class 1, Category A misconduct is to be removed from his/her job assignment. Therefore, Section VI. C-2, Misconduct Sanctions, of DC-ADM 801, Inmate Disciplinary and Restricted Housing Procedures is amended to include:

    j.    Any employed inmate found guilty of a Class 1, Category A misconduct is to be removed from his/her job assignment.

Please be guided accordingly.



**Bulletin**

**Commonwealth of Pennsylvania · Department of Corrections**

| To: | Executive Staff<br>Superintendents<br>Regional Directors | Policy Subject: | Inmate Disciplinary and<br>Restricted Housing<br>Procedures |
|---|---|---|---|

**Policy Number:** DC-ADM 801-4

**Policy Issue Date:** ~~May 20, 1994~~

| Date of Issue:<br><br>October 1, 1997 | Authority:<br><br>*Martin F. Horn* | Effective Date:<br><br>November 1, 1997 |
|---|---|---|

The procedures for appeal to final review outlined under DC-ADM 801, VI, I, 3 are amended as follows:

(1)      The Chief Hearing Examiner will review and respond to all misconduct appeals to final review. The Chief Hearing Examiner will review the misconduct, the hearing report, all appeals therefrom, and the issues raised to final review. All appeals from institution which are subject to the <u>ICU vs. Shapp</u> Consent Decree will be reviewed by an attorney prior to response by the Chief Hearing Examiner.

(2)      Upon completion of final review the Chief Hearing Examiner, will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(3)      In all cases where the action of the Hearing Examiner, PRC or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(4)      The Chief Hearing Examiner will notify Counsel for the ICU class of the disposition at final review of any matter raised to final review alleging violation of the <u>ICU vs. Shapp</u> Consent Decree.

      It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.



|  |  |
| --- | --- |
| **Bulletin**<br>**Commonwealth of Pennsylvania · Department of Corrections** |  |

| | |
| --- | --- |
| **To:** Executive Staff<br>Superintendents<br>Regional Directors | **Policy Subject:**<br><br>Inmate Disciplinary and Restricted<br>Housing Procedures |
| | **Policy Number:** DC-ADM 801-5 |
| | **Policy Issue Date:** October 20, 1994 |

| **Date of Issue:** | **Authority:** | **Effective Date:** |
| --- | --- | --- |
| October 10, 1997 | | November 1, 1997 |

The purpose of this bulletin is to affirm that the role of the Hearing Examiner is to serve as an impartial party in the inmate disciplinary process for rule violations. This is to ensure objectivity and that hearings for rule violations are conducted by persons not involved in the incident or rule/regulation violation.



| | |
|---|---|
| **To:**<br><br>Executive Staff<br>Superintendents<br>Regional Directors<br>Boot Camp Commander | **Policy  Subject:**<br>Inmate Disciplinary and Restricted Housing Procedures |
| | **Policy Number:** DC-ADM 801-6 |
| | **Policy Issue Date:** May 20, 1994 |

| **Date of Issue:** | **Authority:** | **Effective Date:** |
|---|---|---|
| October 21, 1997 | *Martin F. Ho* | November 1, 1997 |

The purpose of this bulletin is to facilitate timely responses from the Chief Hearing Examiner's Office to all appeals to final review.

(1) All appeals to final review should be addressed to the Chief Hearing Examiner,

> Chief Hearing Examiner
> 1451 S. Market Street
> Elizabethtown, PA 17022

Appeals which are addressed to the Commissioner, Chief Counsel, to other Central Office staff, are of course, delivered to these individuals first, then have to be referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response at final appeal.

(2) Inmates appealing to final review are responsible for providing the reviewing body with any available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the Misconduct Report, Hearing Examiner's Report, Inmate Version and Witness Forms (if applicable), Appeal to Program Review Committee, Program Review Committee Response, Appeal to the Super-intendent and the Superintendent's Response. Appeals without the proper records will be reviewed, but the review will be delayed until the appropriate paperwork can be obtained.

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
April 13, 2000

Subject:    Revision of the DC-ADM 801, Inmate Discipline Manual,
            Section 1, Automated Misconduct Tracking

To:         Executive Staff
            Superintendents
            CCC Regional Directors
            Boot Camp Commander

From:       J.D. Shutt
            Director, Bureau of Standards, Practices and Security

Attached please find a copy of the new attachment "C, Informal Resolution: for the ADM 801, Inmate Discipline Manual, Section 1, Automated Misconduct Tracking. This attachment contains the instructions for entering informal resolution actions into the automated misconduct tracking system.

Additionally, Subsection II-B-1, of Section 1 of the 801 manual is amended to read, "All DC-141's issued as a misconduct report, DC-ADM 802 "Other Report" and informal resolution reports shall be entered into the "Automated Misconduct Tracking System." The Shift Commander or designee will use the automated system to log all such reports received. The logging of misconduct and informal resolution reports will occur prior to the misconduct being served or the informal resolution meeting being conducted. Misconduct and informal resolution reports that are not approved by the Shift Commander shall be logged prior to returning the employees copy of the report to the issuing employee."

Attachment (Attachment C, Informal Resolution)

cc: file



EXHIBIT 2



| | **POLICY STATEMENT**<br>**Commonwealth of Pennsylvania ● Department of Corrections** |
|---|---|

| Policy Subject:<br>**ADMINISTRATIVE CUSTODY PROCEDURES (DC-ADM 802)** | Policy Number:<br>**DC-ADM 802** |
|---|---|

| Date of Issue:<br>June 29, 1992 | Authority: | Effective Date:<br>October 29, 1992 |
|---|---|---|

## I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

This directive describes the policies and procedures for assigning inmates who are incarcerated in state correctional institutions and state regional correctional facilities to Administrative Custody status. This policy is to provide an Administrative Hearing process which provides clear notice to inmates of the reason for their confinement and outlines a fair hearing process.

## III. APPLICABILITY

This policy is applicable to all persons who are employed by the Department of Corrections and to those individuals and groups who have business or use the resources of the Department, and to all Restricted Housing Units, Administrative Custody Units and Special Management Units within the Department of Corrections.

## IV. DEFINITIONS

For the purpose of this directive, the following definitions shall apply:

A. Administrative Custody - A status of confinement for non-disciplinary reasons which provides closer supervision, control, and protection than is provided for in general population.

B. Central Office Review Committee (CORC) - A panel of at least three Central Office staff members appointed by the Commissioner, including an attorney from the Office of Chief Counsel, who conduct final reviews of institution grievance and misconduct appeals.

C. Disciplinary Custody - The maximum restrictive status of confinement to which inmates found guilty of Class I misconducts may be committed.

D. General Population - A status of confinement for all other inmates who are not in Administrative or Disciplinary Custody.

E. Hearing Examiner - Pursuant to the terms of Department of Corrections Administrative Directive 801, the person responsible for fact-finding and discipline with regard to violations of institution rules.

DC-ADM 802

F.  Pre-Hearing Confinement - A temporary administrative status of confinement in the inmate's general population cell or in the RHU, pending the outcome of a misconduct hearing.

G.  Program Review Committee (PRC) - A panel of three (3) members consisting of two (2) Deputy Superintendents, the Classification and Treatment Manager (Inmate Program Director), or Unit Manager. The Superintendent may designate appropriate substitutes. The Program Review Committee conducts Administrative Custody hearings, thirty (30) day reviews, makes decisions about continued confinement in the RHU/SMU, and hears all appeals of misconducts.

H.  Restricted Housing Unit (RHU) - An area or group of cells for inmates assigned to disciplinary or administrative custody status.

I.  Special Management Unit (SMU) - A special unit within designated Department of Corrections institutions designed to safely and humanely handle inmates whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates or him or herself.

J.  Unit Management Team - The individuals assigned to operate a housing unit with the responsibilities for security, risk management, and program delivery. The Unit Management Team may act as the Hearing Examiner and decide Class 2 misconducts in those institutions where the Commissioner has specifically approved their use in this manner.

K.  Unit Manager - The individual who is responsible for the supervision of all members of the Unit Management Team and the delivery of security and program services.

## V.   POLICY

It is the policy of the Department of Corrections to provide a safe and secure environment for all staff and inmates. Administrative Custody is to be used to further this purpose by separating those inmates whose presence in general population would constitute a threat to themselves, others or the safety and security of the institution.

## VI.  PROCEDURES

A.  Reasons For Transfer To Administrative Custody

1.  An inmate may be transferred from general population to Administrative Custody by order of the shift commander for the following reasons:

    a.  The inmate is a danger to some person(s) in the institution who cannot be protected by alternate measures;

    b.  The inmate is a danger to himself/herself;

    c.  The inmate is suspected of being or is the instigator of a disturbance;

    d.  Placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;

    e.  The inmate would pose an escape risk in a less secure status;

    f.  The inmate has been charged with or is under investigation for a violation of institution rules and there is a need for increased control pending disposition of charges or completion of the investigations.

    g.  The inmate has requested and been granted self-confinement;

    h.  The inmate is being held temporarily for another authority and is not classified for the general population of the holding institution;



| **POLICY STATEMENT** |
| Commonwealth of Pennsylvania ● Department of Corrections |

| Policy Subject: | Policy Number: |
| ADMINISTRATIVE CUSTODY PROCEDURES (DC-ADM 802) | **DC-ADM 802** |

| Date of Issue: | Authority: | Effective Date: |
| June 29, 1992 | | October 29, 1992 |

## I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

This directive describes the policies and procedures for assigning inmates who are incarcerated in state correctional institutions and state regional correctional facilities to Administrative Custody status. This policy is to provide an Administrative Hearing process which provides clear notice to inmates of the reason for their confinement and outlines a fair hearing process.

## III. APPLICABILITY

This policy is applicable to all persons who are employed by the Department of Corrections and to those individuals and groups who have business or use the resources of the Department, and to all Restricted Housing Units, Administrative Custody Units and Special Management Units within the Department of Corrections.

## IV. DEFINITIONS

For the purpose of this directive, the following definitions shall apply:

A. Administrative Custody - A status of confinement for non-disciplinary reasons which provides closer supervision, control, and protection than is provided for in general population.

B. Central Office Review Committee (CORC) - A panel of at least three Central Office staff members appointed by the Commissioner, including an attorney from the Office of Chief Counsel, who conduct final reviews of institution grievance and misconduct appeals.

C. Disciplinary Custody - The maximum restrictive status of confinement to which inmates found guilty of Class I misconducts may be committed.

D. General Population - A status of confinement for all other inmates who are not in Administrative or Disciplinary Custody.

E. Hearing Examiner - Pursuant to the terms of Department of Corrections Administrative Directive 801, the person responsible for fact-finding and discipline with regard to violations of institution rules.

DC-ADM 802

F.  Pre-Hearing Confinement - A temporary administrative status of confinement in the inmate's general population cell or in the RHU, pending the outcome of a misconduct hearing.

G.  Program Review Committee (PRC) - A panel of three (3) members consisting of two (2) Deputy Superintendents, the Classification and Treatment Manager (Inmate Program Director), or Unit Manager. The Superintendent may designate appropriate substitutes. The Program Review Committee conducts Administrative Custody hearings, thirty (30) day reviews, makes decisions about continued confinement in the RHU/SMU, and hears all appeals of misconducts.

H.  Restricted Housing Unit (RHU) - An area or group of cells for inmates assigned to disciplinary or administrative custody status.

I.  Special Management Unit (SMU) - A special unit within designated Department of Corrections institutions designed to safely and humanely handle inmates whose behavior presents a serious threat to the safety and security of the facility, staff, other inmates or him or herself.

J.  Unit Management Team - The individuals assigned to operate a housing unit with the responsibilities for security, risk management, and program delivery. The Unit Management Team may act as the Hearing Examiner and decide Class 2 misconducts in those institutions where the Commissioner has specifically approved their use in this manner.

K.  Unit Manager - The individual who is responsible for the supervision of all members of the Unit Management Team and the delivery of security and program services.

## V.  POLICY

It is the policy of the Department of Corrections to provide a safe and secure environment for all staff and inmates. Administrative Custody is to be used to further this purpose by separating those inmates whose presence in general population would constitute a threat to themselves, others or the safety and security of the institution.

## VI.  PROCEDURES

A.  Reasons For Transfer To Administrative Custody

1.  An inmate may be transferred from general population to Administrative Custody by order of the shift commander for the following reasons:

a.  The inmate is a danger to some person(s) in the institution who cannot be protected by alternate measures;

b.  The inmate is a danger to himself/herself;

c.  The inmate is suspected of being or is the instigator of a disturbance;

d.  Placement in general population would endanger the inmate's safety or welfare when it is not possible to protect him/her by other means;

e.  The inmate would pose an escape risk in a less secure status;

f.  The inmate has been charged with or is under investigation for a violation of institution rules and there is a need for increased control pending disposition of charges or completion of the investigations.

g.  The inmate has requested and been granted self-confinement;

h.  The inmate is being held temporarily for another authority and is not classified for the general population of the holding institution;

DC-ADM 802

      i. No records are available to determine the inmate's custody level;

      j. The inmate is a phase I capital case.

  2. An inmate who has completed a Disciplinary Custody sentence may be transferred into Administrative Custody by order of the Program Review Committee for any of the reasons identified in VI.A. 1. However, a hearing as described below will be held.

B. Procedures To Place An Inmate in Administrative Custody

  1. Notice - Whenever practical, a written notice of the reasons for administrative custody placement shall be given to the inmate prior to placement, but in all cases within a reasonable time after placement. This written notice shall be prepared on the misconduct form DC-141 Part 1 by indicating "Other".

  2. Hearing

    a. The hearing shall be conducted by the Program Review Committee.

    b. The inmate shall have a hearing on the reasons for his/her Administrative Custody confinement.

    c. When the inmate is in Administrative Custody in pre-hearing confinement on a misconduct charge, no hearing will be held on the reason(s) for confinement if a hearing on the misconduct charge is held within 6 days and the misconduct charge is disposed of at the hearing. A request by the inmate for a continuance of the disciplinary hearing is an automatic waiver of the hearing on the reason(s) for pre-hearing confinement.

    In all other cases, except as noted in section d. below, the hearing shall be scheduled not more than 6 days after Administrative Custody placement.

    d. Confinement in Administrative Custody for investigative purposes pursuant to Section VI.A. 1.f. of this directive shall not exceed 10 calendar days. The Superintendent may approve one additional 10 day investigative confinement period if the investigation has not been completed. The reason for the continuation shall be documented and a copy provided to the inmate. Following the 20 day period the inmate must be charged with a misconduct and a subsequent hearing held within six days if the inmate is not to be released to population.

    e. The rationale for the Administrative Custody placement shall be read and explained to the inmate.

    f. The inmate shall be permitted to respond to the rationale for Administrative Custody placement. The inmate may tell his/her version orally or submit it in writing. A summary of any relevant oral statement by the inmate shall be written down by a committee member.

    g. The Program Review Committee's decision shall be based on some evidence as to whether there is a valid security reason to confine the inmate in Administrative Custody as defined in Section A (1) above. The evidence may include counselor's reports, Psychiatric/Psychological data, staff recommendations and investigative reports.

    h. A written summary of the hearing will be prepared on the DC-141 Part III which shall include the reason(s) relied upon by the Program Review Committee to reach its decision. A copy of the written summary will be given to the inmate. The inmate may if he/she wishes submit a concise summary of the hearing, which shall be made a permanent part of the file.

DC-ADM 802

3. Inmate Unable to Attend

If in the opinion of the Program Review Committee, the inmate is physically or mentally unable to attend or participate in a hearing the hearing shall be postponed until the inmate is able to attend and participate. The decision to postpone a hearing shall be documented on the DC-141 Part III and shall be made close to the time the hearing would have been held. No appeal from the decision to postpone shall be permitted. If the inmate is able to attend and refuses the hearing will be held in absentia.

4. Appeal

a. An inmate may appeal the decision of the Program Review Committee concerning his/her initial confinement in Administrative Custody to the Superintendent within two days of the completion of the hearing. The appeal **must** be in writing. The decision of the Superintendent will be forwarded to the inmate within ten days of the receipt of the appeal. For the purpose of the Consolidated Inmate Grievance Review System this shall be the Appeal from Initial Review.

b. An inmate may appeal the initial decision of the Superintendent to continue him/her in Administrative Custody confinement to the Central Office Review Committee (CORC) for Final Appeal pursuant to the provisions of Department of Corrections Administrative Directive 804. The CORC will review the record of the hearing and all other relevant documents and rule on the appeal within two working days after its receipt.

c. The inmate's right to appeal terminates when he/she is released from Administrative Custody.

5. Waiver

a. An inmate may voluntarily waive the hearing described in this directive at any time prior to the hearing's completion. He/She may also waive the written notice requirements and any time limitations relating to the hearing or the service of notice.

b. All waivers shall be in writing and shall be signed and dated by the inmate.

c. When an inmate requests self-confinement in Administrative Custody, such request shall be deemed a waiver of all procedures described in this directive except periodic Program Review Committee review. Only written notice of the reason for the Administrative Custody placement shall be necessary.

d. Any refusal to attend a hearing shall be deemed to be a waiver of the proceeding. Any refusal shall be documented on the DC-141 Part III. The inmate may not appeal the results of a hearing he/she refuses to attend.

C. Periodic Review By The PRC

1. At least once every 30 days those inmates assigned to Administrative Custody will have the opportunity to be personally interviewed by the Program Review Committee. If the inmate is not released to general population, the Program Review Committee will document the reasons why continued Administrative Custody is necessary on the DC-141 Part III.

The inmate may refuse to attend this review, which will be documented on the Part III, the review will then be held in absentia.

2. Inmates in Administrative Custody can be released to population by the Program Review Committee or the Superintendent at any time during their confinement.

DC-ADM 802

3.  Specific items should be evaluated in making the decision whether to continue or release an inmate from Administrative Custody:

    a. Time in RHU.

    b. Number, type and frequency of misconducts

    c. Continued public or institution risk

    d. Safety of the inmate, other inmates and staff

    e. Behavior in RHU including sanitation, personal hygiene and grooming, response to authority, response to other inmates and response to verbal and written orders.

    f. Recommendation of RHU and treatment staff

4.  For those inmates who are not released from Administrative Custody following the 30 day review, the DC-141 Part III will be forwarded to the Superintendent for his/her review and action. If he/she agrees that the reason for holding an inmate in Administrative Custody is reasonable, he/she will notify the inmate by initialing or signing the DC-141 Part III. If, however, the Superintendent believes the inmate should be released to population he/she shall so order it.

5.  After 90 days in Administrative Custody, a formal report to the Regional Deputy Commissioner utilizing the DC-141 Part IV will be completed by the Superintendent or designee. The Regional Deputy Commissioner shall review the recommendation of the institution to determine if any further action is necessary, which may include release to population, transfer to another facility or program, or continue in Administrative Custody. He/She shall further designate the next date at which he/she will conduct a review, and another DC-141 Part IV will be forwarded at that time.

    If the inmate is released to population on or before the periodic review time period, it will not be necessary to refer their case to the Regional Deputy Commissioner or to complete the DC-141 Part IV.

6.  Capital cases will not be released from Administrative Custody status but will still be reviewed at 30 day intervals with the appropriate 90 day reports prepared.

7.  Procedures for processing DC-141 Part IV 90 Day Review:

    | | |
    |---|---|
    | D.C. Number | Enter the inmate's I.D. number. |
    | Name | Enter the inmate's name. |
    | Institution | Enter the abbreviation for the reporting institution. |
    | Date of Review | Enter the date of the 90 day review. |
    | # of Review | Enter the sequence number of the review as applied to during the term of continuous confinement. |
    | Time Served in DC: | Enter the amount of time served in Disciplinary Custody during the current term of RHU confinement. |
    | Time Served in AC: | Enter the amount of time served in Administrative Custody during the current term of RHU confinement. |

DC-ADM 802

| | |
|---|---|
| Date Placed in PHU: | Enter the initial date of RHU confinement for this period of continuous confinement. |
| Total Continuous RHU Time: | Enter the amount of time served continuously in the RHU to date of review. |
| Date Last Psychological: | Enter the date of the last psychological examination completed in conformance with the requirements of OM-082.07. |
| Current Status: | Check the appropriate blank to indicate the current status of the inmate. AC-Administrative Custody. |
| Initial Reason for Confinement in RHU: | Indicate the reasons for the initial placement in Administrative Custody for the current period of continuous confinement. |
| Program Review Committee's Progress Report and Specific Rationale for Continued Placement: | This section shall contain a status report detailing the reasons the Program Review Committee feels that continued Administrative Custody is necessary for the inmate. A recommendation should be made whether to continue the inmate in Administrative Custody, or recommend a transfer to another institution. |
| Superintendent's Comments and Recommendations: | The Superintendent shall include his/her own comments in this section including a summary of the institution's efforts to reintegrate the inmate into general population. If the inmate cannot be moved out of Administrative Custody a statement should be made to that effect. The Superintendent may conclude to overrule the Program Review Committee and release the inmate to population, continue in Administrative Custody, or recommend a transfer. |
| Signature: | The Superintendent must sign and date the report. |
| Regional Deputy Commissioner Final Action: | The Regional Deputy Commissioner will take final action on the inmate and return his/her decision to the institution. He/She will further specify when he/she is next to review an Administrative Custody case. |
| Signature: | The Regional Deputy Commissioner must sign and date the report. |

8. All inmates continuously confined in Administrative Custody for a period of one year shall be given annual psychological or psychiatric examinations during their confinement.



**V.  ADMINISTRATIVE CUSTODY HOUSING STATUS**

A.  Administrative Custody is a status of confinement for maximum custody level inmates which provides the highest level of security and control. Inmates confined in this status shall not have the privileges accorded to inmates in lower security levels. The following conditions apply:

1.  Smoking will be limited to two packs of cigarettes or their equivalent per week.

2.  There will be no radios, televisions, telephone calls (except emergency or legal), personal property or commissary except writing materials.

3.  Non-legal visits of one per week will be allowed under the appropriate security procedures. PRC to determine the security of visits.

DC-ADM 802

4. They will be allowed legal materials that may be contained in one records center box. Any additional legal materials will be stored and made available within a reasonable time period upon written request on an even exchange basis.

5. They will be allowed incoming mail per DC-ADM 803. However, no books other than legal materials and a personal Bible, Holy Koran or other religious equivalent will be permitted. Inmates will be provided access to the institution law library by requesting legal materials in accordance with local policy. Leisure reading material may be requested on a weekly basis from the library.

6. Inmates in administrative custody status will be provided with an RHU jumpsuit, footwear, and basic issue toilet articles. Two (2) pair of personal undergarments are permitted. No other personal property is permitted. Outer wear for exercise will be provided as needed.

7. Exercise will be one (1) hour per day, five (5) days per week, and inmates shall be permitted three (3) showers and three (3) shaves per week.

B. PRC or security level 5 unit management teams may add to the above privileges based on an individual's need, on safety and security, and on behavioral progress of the inmate. Specifically, with the approval of PRC, inmates may be granted increased smoking and visiting privileges, radios, televisions, telephone calls, commissary, access to educational books and materials, and any other general population privileges with the following exceptions: freedom to move about the institution, freedom to engage in programs with the general population, the use of civilian clothing, the use of items specifically found by the Program Review Committee or security level 5 unit management team to be a security hazard, and commissary special order privileges. These extra privileges once given may also be removed by the Program Review Committee or security level 5 unit management team based on an individual's behavior and on the security of the institution.

C. Inmates placed in Administrative Custody status at the initiative of the institution administration for protection reasons that are not a result of their behavior or the need for more secure control over that inmate will be given all of the available RHU privileges outlined in sections VII.A. and VII.B., except freedom to move about the institution, freedom to engage in programs with the general population, the use of civilian clothing, the use of items specifically found by the Program Review Committee to be a security hazard and commissary special order privileges.

## VIII. RIGHTS UNDER THIS DIRECTIVE

This directive sets out policy and procedure. It does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. The directive should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the directives and policies of the Department of Corrections.

## IX. SUPERSEDED POLICY AND CROSS-REFERENCE

This policy supersedes all previous policy on this subject i.e. (Volume II, DC-ADM 802) dated May 1, 1984. In an extended emergency situation or extended disruption of normal institution operation, any provision or section of this policy may be suspended upon approval of the Commissioner of Corrections.

Policy Manual Cross-References: 801

ACA Cross References:  2-4214, 2-4215, 2-4218, 2-4220, 3-4237, 3-4241, 3-4239

_____
Joseph Lehman
Commissioner



**Bulletin**

**Commonwealth of Pennsylvania ● Department of Corrections**

| To: | Policy Subject: |
|-----|-----------------|
| **Superintendents**<br>**Regional Directors**<br>**Boot Camp Commander**<br>**Executive Staff** | **DC-ADM 802**<br>**ADMINISTRATIVE CUSTODY PROCEDURES** |

| | Policy Number:    **DC-ADM 802-1** |
|---|---|
| | Policy Issue Date:  **June 29, 1992** |

| Date of Issue:<br>December 29, 1992 | Authority: | Effective Date:<br>December 29, 1992 |
|---|---|---|

This bulletin is being written to provide clarity and consistency in the manner in which we address the needs of a specific type of Administrative/Protective Custody case.

A recent informal telephone survey to several of our institutions revealed a lack of consistency in the granting of additional privileges to those inmates who are in administrative custody status for protection reasons that are not a result of their own behavior or the need for more secure control over that inmate. Some institutions are affording the same privileges to all administrative custody cases even if their placement is for protection reasons similar to the type described above.

This specific type of protective custody case, although, relatively few in number, has received increasing attention in the courts. A recent Supreme Court ruling (Lane v. Williams, U.S. Sup. Ct. #88899, 1989) demonstrated that courts will require protective custody units to provide programs, services and living conditions comparable to general population inmates. While our budget and current population level prevents us from providing separate living units, we at least want to be in compliance with ACA standards for specific types of administrative/protective custody cases, specifically standard 3-4261, (pg. 85) in the Standards for Adult Correctional Institutions, 3rd Edition.

While we thought the language and intent was clear in DC-ADM 802, Administrative Custody Procedures (Sec. VII.C.) and policy 6.5.1, Administration of the Restricted Housing Units (Sec. V.B.), because of the varying responses from the field, we felt the issuance of this bulletin was necessary to ensure that the PRC is granting privileges in a consistent manner to this specific type of administrative/protective custody case.

The PRC, at the conclusion of the 802/Administrative Custody hearing, shall make the determination as to whether the inmate's placement in administrative custody is for protection reasons that are not a result of their behavior or the need for more secure control over that inmate. This determination shall be based on an internal investigation (if necessary) and any other information deemed relevant by the PRC.

If the determination is made that the inmate's placement is not a result of their behavior or the need for more secure control over that inmate, then the PRC shall permit all of the available privileges outlined in DC-ADM 802 Section VII.A. and additional privileges listed in VII.B (also listed in Section V.B. of Administration of the Restricted Housing Unit policy 6.5.1) except freedom to move about the institution, freedom to engage in programs with the general population, the use of civilian clothing and the use of items specifically found by the Program Review Committee or Security Level 5 unit management team to be a security hazard. These extra privileges once given may also be removed by the PRC or security level 5 unit management team based on the individual's behavior and on the security of the institution.

Once the PRC determines that an inmate's placement in this status was not behavior-driven but still wishes to deny the above listed privileges, such denial must be requested via written documentation to the appropriate Regional Deputy Commissioner.

Effort should then first be made to place this type of inmate in a general population housing unit of an appropriate security level in his/her assigned institution or, if not feasible, in another institution. Should a transfer option not be available for this particular type of protective custody case, then the PRC shall be responsible for developing an individual prescriptive program plan for each inmate in this specific type of status consistent with the inmate's programming needs and custody level.



| To: | Policy Subject: |
|---|---|
| **Superintendents** **Boot Camp Commander** **Executive Staff** **Regional Directors** | **DC-ADM 802** **ADMINISTRATIVE CUSTODY PROCEDURES** |

| | **Policy Number:** | **DC-ADM 802-2** |
|---|---|---|
| | **Policy Issue Date** | **June 29, 1992** |

| Date of Issue: August 16, 1995 | Authority: *Raymond Clymer Jr.* | Effective Date: August 16, 1995 |
|---|---|---|

Section VII.A.4, **Administrative Custody Housing Status,** is amended by this Bulletin to allow inmates to maintain **religious,** as well as legal materials, in one (1) records center box while they are housed in administrative custody.



**Bulletin**

**Commonwealth of Pennsylvania ● Department of Corrections**

| To: | Policy Subject: |
|---|---|
| **Superintendents** **Boot Camp Commander** **Bureau Directors** **Executive Staff** | **DC-ADM 802** **ADMINISTRATIVE CUSTODY PROCEDURES** |

| Policy Number: | DC-ADM 802-3 |
|---|---|

| Policy Issue Date: | October 29, 1992 |
|---|---|

| Date of Issue: November 27, 1995 | Authority: | Effective Date: January 1, 1996 |
|---|---|---|

The Administrative Directive 802, Section VI-B-4 is amended to read as follows:

   a.   An inmate may appeal the decision of the Program Review Committee concerning his/her initial confinement in Administrative Custody to the Superintendent within two days of the completion of the hearing. The appeal **must** be in writing. The decision of the Superintendent will be forwarded to the inmate within ten days of the receipt of the appeal. For the purpose of the Consolidated Inmate Grievance Review System this shall be the Appeal from Initial Review.

   b.   An inmate may appeal the initial decision of the Superintendent to continue him/her in Administrative Custody confinement to the Central Office Review Committee (CORC) for Final Appeal pursuant to the provisions of Department of Corrections Administrative Directive 804. The CORC will review the record of the hearing and all other relevant documents and rule on the appeal within two working days after its receipt.

   c.   If the Program Review Committee decides to continue the inmate in Administrative Custody following each 30 Day Review, the inmate may appeal his continuation to the Superintendent within two days of the completion of the review. The decision of the Superintendent will be forwarded to the inmate within ten days of the receipt of the appeal. There shall be no further appeal from the Superintendent's review.

   d.   The inmate's right to appeal terminates when he/she is released from Administrative Custody.

Further, Sections VI-C, #4 and #5 as well as #7 are deleted.



**Bulletin**

**Commonwealth of Pennsylvania ● Department of Corrections**

| To: | Policy Subject: |
|---|---|
| **Executive Staff**<br>**Superintendents**<br>**CCC Regional Directors**<br>**Boot Camp Commander** | **Administrative Custody Procedures**<br>**(Phase 1 Capital Case Inmates)** |

| **Policy Number:** | **DC-ADM 802-4** |
|---|---|
| **Policy Issue Date:** | **June 29, 1992** |

| Date of Issue:<br>March 23, 1998 | Authority: *Martin F H* | Effective Date:<br>September 23, 1998 |
|---|---|---|

The purpose of this bulletin is to describe and clarify the privileges permitted to Phase 1 Capital Case inmates housed in administrative custody. Listed below are the conditions that should apply to inmates in this status. However, at the discretion of the Program Review Committee or security level 5 unit management team, these privileges may be restricted or removed based on behavior, security of the institution, or abuse of privileges.

These guidelines only apply to capital cases at their parent institution and requests for additions or changes to this policy require the approval of the respective regional deputy secretary:

1.  Exercise – One hour per day, five days per week, outdoor exercise.

2.  State Issue Clothing – RHU jumpsuit, canvas slide footwear, three pair of socks, three pair of under-wear (includes three undershirts for males and three bras for females). Each inmate is to be provided a pair of state issued shoes, not retained in the cell, but provided for exercise and for any outside trips. Appropriate clothing and footwear (boots, state shoes, coat, hat, etc.) are to be provided for exercise but not retained in the cell.

3.  Radios and Televisions – These items are permitted in accordance with DC-ADM 815 with the exception of inmates in the DCC.

4.  Showers – Three times per week.

5.  Personal Property – One cocoa brown sweat suit (top and bottom) except for DCC inmates, two pair of underwear and two pair of socks (total of five including state issued pairs), one bathrobe, one pair of long underwear, one pair of pajamas, one pair of shower clogs, and one rug in addition to the prayer rug. The sweat suit may be worn under jumpsuits for exercise. Sneakers and other personal shoes are prohibited.

6.  Visits – One visit per week for a one to two hour duration. However, special consideration can be given to the length of visit based on special circumstances such as long distances traveled by visitors. Visits will be permitted seven days per week.

7. Telephone Calls – Inmates will be offered one phone call, for a maximum of 15 minutes, per week. Telephone calls to attorneys and emergency calls will be handled as directed by the DC-ADM 818.

8. Cell Content – A maximum of two record center boxes will be permitted. Clothing items and footwear do not have to be stored in these boxes. Each cell is to be provided with a desk/chair and cabinet. The cabinet can be used for storage in addition to the two record center boxes.

9. Commissary – Capital case inmates will be permitted the same weekly commissary spending limit as general population inmates. Inmates may retain the same amount of consumable commissary items as general population inmates at any one time and this limit is to be strictly enforced. Phase 1 Capital Case inmates are permitted items from the approved master commissary list (DC-ADM 815) in accordance with the following guidelines:

    a. Store Items

        1) Tobaccos and accessories are permitted. Pipes and pipe accessories are prohibited.

        2) Confections are permitted.

        3) Toilet articles and cosmetics (females) are permitted. Razors, razor blades, nail clippers, barrettes, bobbie pins, emery boards, hair clips, nail polish, nail polish remover, and tweezers are prohibited (necessary items such as razors and nail clippers are to be provided for use and returned as per current practice). The inmate may retain lotions and creams but the size of the product may be limited. Soap, toothpaste, deodorants, lotions, and shampoos are limited to one each.

        4) Clothing – Prohibited except where items are approved within this bulletin.

        5) Miscellaneous – The following items are prohibited: batteries, cell window curtains, needle and thread, padlocks, ball point pens (security pens are to be provided), shoe accessories. Capital case inmates are not permitted crochet and knitting materials, yarn, or umbrellas.

    b. Security Issues

        If any permitted item presents a valid security concern in a particular facility, that facility may request approval via the regional deputy secretary to generally restrict that item.

Approved Outside Purchase List

        Only the following items shall be permitted. Art supplies in accordance with local policy, radio, television, watch and watch batteries.

The current 802, 6.5.1, and 6.5.8 govern all issues not specifically covered in this bulletin.

This bulletin is to be implemented immediately, however, where the privileges noted are less than those currently permitted, facilitites may develop a plan to phase in the change over the next six months.



| | Bulletin |
|---|---|
| | **Commonwealth of Pennsylvania ● Department of Corrections** |

| To: | Policy Subject: |
|---|---|
| **Executive Staff** **Superintendents** **CCC Regional Directors** **Boot Camp Commander** | **Administrative Custody Procedures** **(Phase 1, Capital Case Inmates)** |

| Policy Number: | **DC-ADM 802-5** |
|---|---|
| Policy Issue Date: | **June 29, 1992** |

| Date of Issue: June 22, 1998 | Authority: *Martin F. Horn* Martin F. Horn | Effective Date: July 1, 1998 |
|---|---|---|

The purpose of this bulletin is to clarify the use of the cabinet and record center boxes by Phase I Capital Case Inmates.

The cabinet is to be used for the storage of the inmate's personal items and the two (2) record center boxes are to be used for the storage of the inmate's legal materials. However, it there is still space available in the cabinet after the inmate put in his/her personal items, the remaining space in the cabinet may be used for legal material storage.

Please be guided accordingly.



The purpose of this bulletin is to authorize Capital Case inmates to purchase one (1) pair of brown sweat shorts. The brown sweat shorts may only be worn for exercise periods or while the inmate is in the cell. These shorts will be in addition to the other clothing items previously permitted.

Additionally, each facility housing Phase 1 and/or Phase 2 inmates is to ensure that a typewriter(s) is available for inmate use in the mini law library.

Please be guided accordingly. If you should have any questions, please contact your Regional Deputy Secretary.



|  | **Bulletin** |
|---|---|
|  | **Commonwealth of Pennsylvania ● Department of Corrections** |

| To: | Policy Subject: |
|---|---|
| **Executive Staff**<br>**Superintendents**<br>**CCC Regional Directors**<br>**Boot Camp Commander** | **Administrative Custody Procedures**<br>**(Phase 1, Capital Case Inmates)** |

| **Policy Number:** | **DC-ADM 802-5** |
|---|---|
| **Policy Issue Date:** | **June 29, 1992** |

| Date of Issue:<br>June 22, 1998 | Authority:<br>Martin F. Horn | Effective Date:<br>July 1, 1998 |
|---|---|---|

The purpose of this bulletin is to clarify the use of the cabinet and record center boxes by Phase I Capital Case Inmates.

The cabinet is to be used for the storage of the inmate's personal items and the two (2) record center boxes are to be used for the storage of the inmate's legal materials. However, if there is still space available in the cabinet after the inmate put in his/her personal items, the remaining space in the cabinet may be used for legal material storage.

Please be guided accordingly.



| | |
|---|---|
| | **Bulletin** |
| | **Commonwealth of Pennsylvania ● Department of Corrections** |

| To: | Policy Subject: |
|---|---|
| **Executive Staff**<br>**Superintendents**<br>**CCC Regional Directors**<br>**Boot Camp Commander** | **Administrative Custody Procedures**<br>**(Phase 1, Capital Case Inmates)** |

| Policy Number: | DC-ADM 802-6 |
|---|---|
| Policy Issue Date: | June 29, 1992 |

| Date of Issue:<br>August 12, 1998 | Authority:<br>Martin F. Horn | Effective Date:<br>August 31, 1998 |
|---|---|---|

The purpose of this bulletin is to authorize Capital Case inmates to purchase one (1) pair of brown sweat shorts. The brown sweat shorts may only be worn for exercise periods or while the inmate is in the cell. These shorts will be in addition to the other clothing items previously permitted.

Additionally, each facility housing Phase 1 and/or Phase 2 inmates is to ensure that a typewriter(s) is available for inmate use in the mini law library.

Please be guided accordingly. If you should have any questions, please contact your Regional Deputy Secretary.



**EXHIBIT 3**



**POLICY STATEMENT**

**Commonwealth of Pennsylvania • Department of Corrections**

| Policy Subject:<br><br>**Consolidated Inmate Grievance Review System** | | Policy Number:<br><br>**DC-ADM 804** |
|---|---|---|
| Date of Issue:<br>July 20, 1994 | Authority:<br>Joseph D. Lehman<br>Commissioner | Effective Date:<br>Oct. 20, 1994 |

## I. AUTHORITY

The Authority of the Commissioner of Corrections to direct the operation of the Department of Corrections is established by Sections 201, 206, 506, and 901-B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of this Administrative Directive to establish policy regarding the Consolidated Inmate Grievance Review System and to ensure that inmates have an avenue through which resolution of specific problems can be sought.

This directive sets forth procedures for the review of Inmate Grievances not already covered by other Administrative Directives and policies. It also provides the method through which review procedures established by other directives are to be integrated with the procedures outlined in this directive.

## III. APPLICABILITY

This policy is applicable to all employees of the Department of Corrections and all inmates under the jurisdiction of the Department of Corrections and to those individuals and groups who have business with or use the resources of the Department of Corrections.

## IV. DEFINITIONS

A. Grievance -

The formal written expression of a complaint submitted by an inmate related to a problem encountered during the course of his/her confinement.

B. Grievance Coordinator -

The Corrections Superintendent's Assistant in an institution or the Assistant to the Regional Director in Community Corrections who is responsible for the overall administration of the Inmate Grievance System in that facility\region. This includes all data collection, tracking and statistical reporting. At the direction of the Facility Manager or Community Corrections Regional Director, the Grievance Coordinator may be called upon to provide Initial Review of certain grievances.

DC-ADM 804

C. Grievance Officer -

An appropriate Department Head or Management Level staff person designated by the Facility Manager or CC Regional Director to provide Initial Review of an inmate grievance arising from his/her specific area of responsibility, e.g., a Unit Manager would be assigned to provide Initial Review of a grievance from the housing unit. If the grievance arises from the Food Services Area, the Grievance Officer designated by the Facility Manager shall be the Food Services Manager, likewise, the Corrections Health Care Administrator would be the Grievance Officer for a grievance related to a Health Care issue.

D. Central Office Review Committee **(CORC)** -

A committee of at least three (3) Central Office staff appointed by the Commissioner of Corrections to include the Commissioner, Executive Deputy Commissioner and Chief Counsel or their designees.

With the exception of appeals from disciplinary action under DC-ADM 801 and appeals arising from Health Care or medical treatment grievances, the CORC Shall have responsibility for direct review of all Inmate Appeals for Final Review.

E. Central Office Medical Review Committee **(COMRC)** -

A committee appointed by the Commissioner to include the Director of the Bureau of Health Services and relevant Bureau staff. The COMRC shall have responsibility for direct review of grievance appeals related to Health Care and medical treatment issues.

F. Initial Review -

The first step in the formal Inmate Grievance Process for all issues except those already governed by other specified procedures (see VI E). All reviews conducted below the level of Facility Manager or Regional Director are considered initial reviews.

G. Appeal from Initial Review -

The first level of appeal of a decision rendered at Initial Review. This appeal is directed to the Facility Manager or Community Corrections Regional Director.

**An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.**

**Only issues raised at Initial Review shall be appealed.**

H. Final Review -

Upon completion of Initial Review and appeal from Initial Review, an inmate may seek Final Review from the Central Office Review Committee **(CORC)**, for any issue involving continued non-compliance with Department of Corrections directives or policy, the ICU Consent Decree or other law.

## V. POLICY

A. It is the policy of the Pennsylvania Department of Corrections that every individual committed to its custody shall have access to a formal procedure - the Consolidated Inmate Grievance Review System - through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. For every such issue there shall be a forum for review and an avenue of appeal, but only one.

DC-ADM 804

B. Informal Resolution of Problems - All inmates are expected to attempt to resolve problems or differences with staff on an informal basis through direct contact or by sending a request slip to appropriate staff. Action taken by the inmate to resolve the situation must be indicated on the grievance form, Section B.

The Grievance Form, DC 804, Part I, is available in each Housing Unit or upon request from Unit staff. This is the proper form to be used for submission of a grievance and it should be completed according to the directions provided.

**It is required that a genuine effort be made to resolve the problem before the grievance system is used. The inmate must document these efforts in Section B of the Grievance Form. Failure to do so may result in the grievance being returned to the inmate without action. The inmate may then refile the grievance with Section B properly completed.**

C. Any inmate using the grievance system shall do so in good faith and for good cause.

No one shall be punished, retaliated against or otherwise harmed for good faith use of this grievance system.

Deliberate misuse of the grievance system may result in restricted access or disciplinary action, at the discretion of the Facility Manager.

D. It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review. See VI., C. 1.

E. The Inmate Grievance Review System is intended to deal with a wide range of issues, procedures or events which may be of concern to inmates. It is not meant to address incidents of an urgent or emergency nature. When faced with such an event, the inmate should contact the nearest staff member for immediate assistance.

## VI. PROCEDURES

A. A Grievance shall be submitted to the Grievance Coordinator in the following manner.

1. All grievances shall be in writing and in the format provided on the forms supplied by the institution (DC-804 Part 1). See Section V., B.

2. All grievances shall be presented individually. Any grievance submitted by a group of inmates will not be processed, however, if the Grievance Coordinator believes that the issue being grieved is legitimate, it will be referred to appropriate Management Staff for review.

3. Only an inmate who has been personally affected by a Department or institution action or policy shall be permitted to seek review of a grievance or appeal. The inmate grievant must sign the grievance or appeal.

4. All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text of the grievance must be legible and presented in a courteous manner. The inmate should identify any persons who may have information which could be helpful in resolving the grievance. The inmate may also specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, the ICU Consent Decree or other law. The inmate may request to be personally interviewed prior to the decision on Initial Review. Any inmate who submits a grievance containing false and malicious information may be subject to disciplinary action.

DC-ADM 804

5. Grievances and appeals based on different events should be presented separately, unless it is necessary to combine the issues to support the claim. The Grievance Officer may combine multiple grievances which relate to the same subject.

   **NOTE:**   At any point in the grievance process, the inmate has the right to withdraw the grievance.

B. Initial Review

1. Initial Review Procedures must be completed before Appeal from Initial Review or Final Appeal may be sought. Any claims of violation of the ICU Consent Decree must be raised through this grievance procedure before they may be addressed by any court.

2. Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause.

3. The Grievance Coordinator will forward the grievance to the appropriate Grievance Officer for investigation and resolution. The inmate grievant and other persons having personal knowledge of the subject matter may be interviewed. A grievant who has requested a personal interview, shall be interviewed.

4. Within ten (10) working days of receipt of the grievance by the Grievance Officer, the grievant shall be provided a written response to the grievance to include a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance.

   The Grievance Coordinator may authorize an extension of up to an additional ten (10) working days if the investigation of the grievance is pending. If an extension is necessary, the grievant shall be so advised in writing.

C. Appeal from Initial Review

1. An Initial Review Decision of a grievance on a Health Care or medical treatment issue may be appealed directly to the Central Office Medical Review Committee for Final Review within five (5) days of receipt by the inmate of the Initial Review decision. A grievance for which the Corrections Health Care Administrator conducted the Initial Review will usually be considered a Medical Grievance.

   All other appeals will be submitted as follows.

2. An inmate may appeal an initial review decision to the Facility Manager or Community Corrections Regional Director in writing, within five (5) days from the date of receipt by the inmate of the Initial Review decision. **The inmate must appeal in this manner prior to seeking Final Review. Only issues which were raised for initial review may be appealed.**

3. All appeals must conform to the requirements specified in Section VI A of this directive. The appeal must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any initial review decision will be permitted.

4. The Facility Manager or Regional Director must notify the inmate of his/her decision within ten (10) working days after receiving the appeal. This decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision.

DC-ADM 804

D. Final Review

1. Any inmate who is dissatisfied with the disposition of an Appeal from Initial Review decision, may, within seven (7) days of receiving the decision, appeal any issue related to non-compliance with the ICU Consent Decree, other law, Department directive or policy, for final review. Only issues raised at the Initial Review and Appeal level may be referred for Final Review.

2. Final Review will not be permitted until the inmate has complied with all procedures established for Initial Review and Appeal from Initial Review. Exceptions may be made for good cause.

3. Final Review of all appeals will be sent directly to the CORC except the following:

   a. Medical Grievances which will be reviewed by COMRC.

   b. Requests for Final Review of appeals from disciplinary actions which were processed through DC-ADM 801. These will be reviewed by the Office of the Chief Counsel which may respond directly to the inmate or refer the appeal to the Central Office Review Committee **(CORC)** for further reviews.

The address of the **CORC/COMRC** is:

> **PA DEPARTMENT OF CORRECTIONS**
> **CENTRAL OFFICE REVIEW COMMITTEE**
> **PO BOX 598/2520 LISBURN ROAD**
> **CAMP HILL, PA 17001-0598**

4. Requests for Final Review must clearly identify the decision appealed from and all reasons for appeal. Only one appeal from any second level (Appeal from Initial Review) decision will be permitted.

5. The CORC\COMRC, or any member thereof, may require additional investigation to be made prior to a decision on a Final Review appeal.

6. The CORC\COMRC will review all issues properly raised according to the above procedures. It may also review and consider any other related matter.

7. For all Appeals receiving Final Review, the CORC/COMRC will issue its decision within twenty-one (21) days after receipt of an appeal. The decision may consist of approval, disapproval, modification, reversal, remand or reassignment for further fact finding, and must include a brief statement of the reasons for the decision. The committee shall notify the grievant and Facility Manager/Regional Director of its decision and rationale.

8. The Chief Counsel will notify counsel for the ICU class of disposition by the CORC/COMRC of any matter raised on Final Review alleging a violation of the ICU Consent Decree.

E. Exceptions

Initial Review and Appeal from Initial Review of issues related to the following Administrative Directives shall be in accordance with procedures outlined therein, and will not be reviewed by the Grievance Officer or Grievance Coordinator.

1. DC-ADM 805 - Policy & Procedures for Obtaining Pre-Release Transfer.

2. DC ADM 801 - Inmate Disciplinary and Restricted Housing Unit Procedures. See DC-ADM 801 VI., G & I

3. DC ADM 802 - Administrative Custody Procedures. See DC-ADM 802, VI, B, 1,2. Appeal from Initial Review, see DC-ADM 802, VI, B, 4, a.

DC-ADM 804

    4.  DC-ADM 814 - Incoming Publications

       See 814-IIIB, Appeal from Initial Review, see 814-IIID.

Additionally, there may be other kinds of issues for which Initial Review Procedures have been previously established by Administrative Memorandum or Policy Statement.

F.  Admissions and Review

    1.  All proceedings pursuant to this directive are in the nature of settlement negotiations and will, therefore, be inadmissible before any court or other tribunal in support of any claim made against the Commonwealth or any employee. No resolution of any grievance offered as a result of this procedure shall be admissible before any court or other tribunal as an admission of violation of the ICU Consent Decree or any State or federal law.

    2.  No decision rendered as a result of the processing of a grievance shall be reviewable by any court unless it establishes a system or institution-wide violation of the decree.

G.  Completion of Review After Transfer

    Any inmate who is transferred after the filing of a grievance or appeal, but prior to the completion of the appeal process, may continue to pursue the grievance or appeal by notifying the Facility Manager or Regional Director of the facility in which confined when the grievance was filed. Adjustments in the various time limitations may be made to facilitate review.

## VII. SUSPENSION DURING EMERGENCY

In an emergency situation or extended disruption of normal institutional operation, any provision or section of this policy may be suspended by the Commissioner or his/her designee for a specific period of time.

## VIII. RIGHTS UNDER THIS POLICY

This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and to permit the accomplishment of the purpose of the policies of the Department of Corrections.

## IX. SUPERSEDED POLICY AND CROSS-REFERENCE

This directive revises the Inmate Grievance System (DC-ADM 804, MAY 1, 1984), and supersedes the pilot grievance system in effect at selected DOC institutions. It does not supersede or repeal any portion of any other directive or policy statement. Where this directive is inconsistent with any other directive or policy, both shall be interpreted so as to provide full review of all issues raised, consistent with the scope and purpose of this directive. Conflicts will most frequently occur at the Initial Review level, where other directives establish committees to review specific issues.

Cross References:  DC-ADM 801, DC-ADM 802

ACA Cross-References:  3-4271

cc:  Executive Deputy Commissioner Reid
     Deputy Commissioner Clymer
     Deputy Commissioner Fulcomer
     Acting Deputy Commissioner Beard
     All Superintendents
     CCC Directors (4)
     File

Joseph D. Lehman,
Commissioner



| | Bulletin<br>Commonwealth of Pennsylvania ● Department of Corrections |
|---|---|

| To:<br><br>**Superintendents**<br>**Boot Camp Commander**<br>**Regional Directors**<br>**Executive Staff** | Policy Subject:<br><br>**DC-ADM 804**<br>**CONSOLIDATED INMATE GRIEVANCE**<br>**REVIEW SYSTEM** |
|---|---|
| | Policy Number:   **DC-ADM 804-1** |
| | Policy Issue Date:  **July 20, 1994** |

| Date of Issue:<br>April 2, 1996 | Authority: | Effective Date:<br>May 20, 1996 |
|---|---|---|

The purpose of this Bulletin is to include medical grievances in the regular grievance process and to **discontinue** the Central Office Medical Review Committee (COMRC). .

It is important that the Superintendent be aware of all functions within the institution. Similarly, it is essential that the Bureau of Health Care Services be included in the CORC process, to include review by the Chief Counsel's office with respect to medical grievances. Therefore, all grievances, including those relating to medical issues, are to be processed in the same manner. The grievance coordinator will continue to forward medical grievances to the CHCA for initial review. Then, the Superintendent will be responsible for the Appeal from Initial Review, as for all other grievances.

Final Appeal of medical grievances will no longer be forwarded to the COMRC. The Central Office Review Committee (CORC) will process the appeals. The Director of the Bureau of Health Care Services, or designee, will participate as a member of CORC for all medical grievance appeals.

The following sections of DC-ADM 804 are to be **discontinued:**

 IV.E.:   Definition of COMRC

 IV.G.:   "An appeal of the Initial Review decision on a grievance related to a Health Care or Medical issue shall be submitted directly to the COMRC at Central Office.

 V.D.:   "It is the intent of the Department of Corrections to provide for an accelerated review of appeals of grievances related to medical issues. For this reason, the inmate is permitted to appeal a medical grievance to the Central Office Medical Review Committee for Final Review directly from Initial Review."



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Executive Staff<br>Superintendents<br>Regional Directors | Policy Subject: | Consolidated Inmate<br>Grievance Review System |
|-----|------|------|------|
| | | **Policy Number:** DC-ADM 804-2 | |
| | | **Policy Issue Date:** July 20, 1994 | |

| Date of Issue:<br>October 1, 1997 | Authority: | Effective Date:<br>November 1, 1997 |
|------|------|------|

The procedures for appeal to final review under DC-ADM 804, VI, D, 5-7, are amended as follows:

(1)     The Chief Hearing Examiner will replace the Central Office Review Committee (CORC) at final review of all grievance appeals. The Chief Hearing Examiner will perform all functions previously performed by CORC.

(2)     In reviewing grievances submitted for final review, the Chief Hearing Examiner will review the initial grievance and response, any appeals therefrom and the responses thereto and the issues appealed to final review.

(3)     The Chief Hearing Examiner will review health care related grievances with the Bureau of Health Care. Appeals raising legitimate legal issues, including but not limited to access to courts and sentencing issues, will be reviewed with an attorney prior to response.

(4)     Upon completion of final review, the Chief Hearing Examiner will respond directly to the inmate in all cases where the position taken by the institution is upheld.

(5)     In all cases where the action of the Grievance Coordinator, PRC, Incoming Publication Review Committee, or Superintendent is reversed or amended, or where a matter is remanded, the Chief Hearing Examiner will prepare a letter to the inmate and a memorandum to the Superintendent. The Chief Hearing Examiner will forward the letter and memorandum to the appropriate Regional Deputy Commissioner for review and signature.

(6)     The Chief Hearing Examiner will be responsible for assuring that:

(a)     appeals to final review are responded to in a timely fashion;
(b)     records pertaining to such appeals are maintained properly; and
(c)     counsel for the ICU class is notified of the disposition at final review of any matter raised to final review alleging a violation of the <u>ICU vs Shapp</u> Consent Decree.

It is the intent of the Department of Corrections to provide inmates with a complete and timely review of all appeals properly raised to final review. These amendments have been established to ensure timeliness at final review while continuing to provide a thorough, impartial review of the issues.



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Executive Staff<br>Superintendents<br>Regional Directors<br>Boot Camp Commander | Policy Subject: | Consolidated Inmate<br>Grievance Review System |
|---|---|---|---|

| | | Policy Number: DC-ADM 804-3 |
|---|---|---|

| | | Policy Issue Date: July 20, 1994 |
|---|---|---|

| Date of Issue:<br><br>October 21, 1997 | Authority:<br><br>*[signature]* | Effective Date:<br><br>November 1, 1997 |
|---|---|---|

The purpose of this bulletin is to facilitate timely responses from the Chief Hearing Examiner's Office to all appeals to final review.

(1) All appeals to final review should be addressed to the Chief Hearing Examiner,

> Chief Hearing Examiner
> 1451 S. Market Street
> Elizabethtown, PA 17022

Appeals which are addressed to the Commissioner, Chief Counsel, to other Central Office staff, are of course, delivered to these individuals first, then have to be referred to the Chief Hearing Examiner. Improperly addressed appeals may cause a delay in the response to final appeal.

(2) Inmates appealing to final review are responsible for providing the reviewing body with any available paperwork relevant to the appeal. A proper appeal to final review should include photocopies of the initial grievance, initial grievance response, and the Superintendent's response. Appeals without proper records will be reviewed, but the review will be delayed until the appropriate paperwork can be obtained.



**Bulletin**

**Commonwealth of Pennsylvania • Department of Corrections**

| To: | Policy Subject: |
|---|---|
| Executive Staff<br>Superintendents<br>CCC Regional Directors<br>Boot Camp Commander | Consolidated Inmate Grievance Review System |
| | **Policy Number:** DC-ADM 804-4 |
| | **Policy Issue Date:** July 20, 1994 |

| Date of Issue: | Authority: | Effective Date: |
|---|---|---|
| April 29, 1998 | Martin F. Horn | May 1, 1998 |

The purpose of this bulletin is to amend the section VI. Procedures, A.4. to read,

"All grievances and appeals must be presented in good faith. They shall include a brief statement of the facts relevant to the claim. The text must be legible and presented in a courteous manner. The Grievant should identify any persons who may have information which could be helpful in resolving the grievance. The Grievant may specifically raise any claims concerning violations of Department of Corrections directives, regulations, court orders, or other law. The Grievant may also include a request for compensation or other legal relief normally available from a court. The inmate may request to be personally interviewed at initial review. Any inmate who submits a grievance containing false information may be subject to disciplinary action. Inmates who have not already completed final review may request compensation or legal relief on appeal to final review."

And to amend Section VI. Procedures, B. Initial Review, 2. to read:

"Grievances must be submitted for initial review to the Facility/Regional Grievance Coordinator within fifteen (15) days after the events upon which the claims are based. Extensions of this time period may be granted by the Facility Manager/Regional Director for good cause. Such extensions will normally be granted if the events complained of would state a claim of violation of federal right.



**EXHIBIT 4**

AUG-25-2000 FRI 12:06 PM          FAX NO.                          P. 03/04

**DC-804**
**PART 1**

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF CORRECTIONS RECEIVED
P.O. BOX 598          SCI COAL TOWNSHIP
CAMP HILL, PA. 17001-0598

99 MAY 24 AM 9:07

**OFFICIAL INMATE GRIEVANCE**          1999 GRIEVANCE No. 3   | 0232-99 |

| TO: GRIEVANCE COORDINATOR | INSTITUTION MEDICAL DEPT. | DATE 5-22-99 |
|---|---|---|
| FROM: (Commitment Name & Number) Brady Davis BX-3685 | Coaltownship INMATE'S SIGNATURE Brady Davis | |
| WORK ASSIGNMENT | QUARTERS ASSIGNMENT R.HU-H | |

**INSTRUCTIONS:**
1. Refer to the inmate handbook Page 12 and DC-ADM 804 for information on the inmate grievance system.
2. State your grievance in Block A in a brief and understandable manner.
3. Next, you are required to list in Block B the specific actions you have taken to resolve this matter. Be sure to include the identity of staff members you have contacted.

A. Brief, clear statement of grievance:       I'm a insulin patient a
diabetic, I need insulin two time a day
I have not received any from the day
I come here on 5-20-99 to this day 5-22-99
I have not seen a Doctor, I ask the nurse
to check my sugar level, but she refused
I informed her it would be dangerous
to take the insulin without knowing
what my sugar level was. I could go in
a diabetic Coma, I need my medication but
I'm afraid to take it without knowing my
sugar level, because I'm in a cell by myself and—

B. Actions taken and staff you have contacted before submitting this grievance:     their no one to see me if I go into a Coma.

Every Nurse that come with the insulin
I tell them I was getting sick!

Your grievance has been received and will be processed in accordance with DC-ADM 804.

K. K. Dascani
Signature of Grievance Coordinator                              5/24/99
                                                                    Date

GOLDENROD—Inmate Copy

AUG-25-2000 FRI 12:05 PM    FAX NO.    P. 02/04

**DC-804**
**PART II**

Received
SCI Coal Township

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS
P.O. BOX 598    99 JUN -7  PM 12: 40
CAMP HILL, PA 17001

Superintendent's Assistant

**OFFICIAL INMATE GRIEVANCE**
**INITIAL REVIEW RESPONSE**

**GRIEVANCE**
**NO.**

| | 0232-99 |
|---|---|

| TO: Brady Davis, BX-3685 | INSTITUTION SCI-Coal Township | QUARTERS RHU | GRIEVANCE DATE 5-22-99 |
|---|---|---|---|

Mr. Davis,

After reviewing your chart and speaking to our Medical Director, he informed me on the night of 5-22-99 your ACCU check was 220. Prior to this reading, you had not taken your insulin for several days. Dr. Kort decreased your insulin from your usual insulin dosage of 20 units of insulin daily, because your ACCU check was 220. He stated that presently your usual dosage of insulin twice a day was much too high and that a much smaller dosage of insulin would be necessary to prevent hypoglycemia.

In the future, this may change depending on your diet and activity level. You will be scheduled for your chronic illness.

WJS/mp
cc:    Ms. Dascani
       Unit Manager
       Records Office
       File

| Refer to DC-ADM 804 Section VIII, for instructions on grievance system appeal procedures. | SIGNATURE OF GRIEVANCE COORDINATOR RKD *Norma J. Ewald, e.H.CA* | DATE 6-2-99 |
|---|---|---|

08/25/2000

State Correctional Institution at Coal Township
Inmate Grievance Tracking System
Grievances for BX3685 - 05/01/1999 thru 08/25/2000

| Grievance Number | Inmate Name | Date Gr. Received | Grievance Category | Housing Unit | Grievance Location |
|---|---|---|---|---|---|
| COA-0686-1999 | DAVIS, BRADY | 12/02/1999 | Harassment | F-1 | |
| COA-0363-2000 | DAVIS, BRADY | 06/13/2000 | Harassment | RHU | |
| COA-0396-2000 | DAVIS, BRADY | 07/11/2000 | Harassment | RHU | |
| Count 3 | | | | | |
| COA-0319-2000 | DAVIS, BRADY | 05/25/2000 | Mail | RHU | |
| Count 1 | | | | | |
| COA-0232-1999 | DAVIS, BRADY | 05/22/1999 | Medical | RHU | |
| Count 1 | | | | | |
| COA-0710-1999 | DAVIS, BRADY | 12/13/1999 | Property | RHU | |
| Count 1 | | | | | |

Page 1

**EXHIBIT 5**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRADY L. DAVIS,
                Plaintiff

          v.

FRANK GILLIS, et al.,
              Defendants

:
:
:
:
:
:
:
:
:
:

No. 1:CV-00-0543

(Judge Rambo)

(Jury Trial Demanded)

## DECLARATION OF KANDIS DASCANI

I, Kandis Dascani, do hereby state under penalty of perjury that the following is true and correct based upon my personal knowledge:

1. I am the Assistant to the Superintendent at the State Correctional Institution - Coal Township, Pennsylvania ("SCI-Coal Township"), Pennsylvania Department of Corrections ("Department").

2. I have been grievance coordinator at SCI-Coal Township since February 14, 1993.

3. As Grievance Coordinator, I am responsible for maintaining records of all grievances filed by prisoners at SCI-Coal Township.

4. Records of grievances are maintained manually as well as in the Inmate Grievance Tracking System database.

5. The Department has in place a Consolidated Inmate Grievance System, DC-ADM 804 (1994).

6. DC-ADM 804 outlines the Department's policies and procedures with respect to the grievance system.

**Davis v. Gillis, et al.**                                    Declaration of Kandis Dascani
No. 1:CV-00-0543 (M.D.Pa.)

7.      After attempted informal resolution of the problem, a written grievance may be submitted

to the Grievance Officer; an appeal from the Grievance Officer's decision may be made

to the Superintendent; and a final written appeal may be presented to the Central Office

Review Committee.

8.      DC-ADM 804 is distributed to all prisoners, including the plaintiff, Brady Davis.

9.      The plaintiff has never complained that the rules were not provided to him.

10.     On May 24, 1999, I acknowledged receipt of an official inmate grievance number 0232-

99 filed by the plaintiff relating to his medical treatment for diabetes.

11.     On June 2, 1999, Medical Administrator Wilma Sewell signed and returned an official

inmate grievance initial review response for grievance 0232-99 explaining the reasons for

the medical department's treatment of plaintiff's diabetes.

12.     Plaintiff never appealed this denial of his grievance to the superintendent at SCI-Coal

Township.

13.     Therefore, plaintiff did not exhaust his administrative remedies with respect to grievance

0232-99.

14.     Plaintiff never filed any grievance of any kind regarding medical treatment for diabetes at

or around January 2000.

15.     Plaintiff never filed any grievance of any kind regarding being placed in the restricted

housing unit in May or June 1999.

2

**Davis v. Gillis, et al.**                                    **Declaration of Kandis K. Dascani**
No. 1:CV-00-0543 (M.D.Pa.)


_Kandis K. Dascani_
Kandis K. Dascani
Grievance Coordinator
State Correctional Institution - Coal Twp.


Executed this  _5ᵗʰ_  day
of September, 2000.

**EXHIBIT 6**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRADY L. DAVIS,                          :
                                         :
            Plaintiff                    :
                                         :
                                         :   No. 1:CV-00-0543
        v.                               :
                                         :   (Judge Rambo)
FRANK GILLIS, et al.,                    :
                                         :   (Jury Trial Demanded)
            Defendants                   :

## DECLARATION OF ROBERT BITNER

I, Robert Bitner, do hereby state under penalty of perjury that the following is true and correct based upon my personal knowledge:

1.  I am the Chief Hearing Examiner, Hearing Examiner Division, Pennsylvania Department of Corrections ("Department").

2.  Pursuant to the Consolidated Inmate Grievance Review System DC-ADM 804, after initial review and an appeal, an inmate may appeal an unsatisfactory decision on a grievance to the central office for final review.

3.  Grievances appealed through the final review stage have exhausted the Department's administrative review process.

4.  The Department's Hearing Examiner Division is responsible for all final reviews of all inmate grievances at all Department facilities.

5.  The Division of Hearing Examiner maintains records of all grievances appealed through the Department's final review.

6.  After a search of the Department's Hearing Examiner Division's records, I have concluded that Brady Davis, BX-3685, has not exhausted any grievance relating to

09/06/00  14:53 FAX 3673912          DOC TRNG ACAD                    ☒004
09/01/2000  15:13   717-705-7240        OAG LITIGATION              PAGE  04/04

Davis v. Gillis, et al.                                    Declaration of Robert Bitner
No. 1:CV-00-0543 (M.D.Pa.)

medical treatment in May or June 1999 nor to being housed in the restrictive housing unit

in May or June 1999.

Robert Bitner
Chief Hearing Examiner
Pennsylvania Department of Corrections

Executed this 9th day
of September, 2000.

2



**EXHIBIT 7**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRADY L. DAVIS,                        :
                                       :
              Plaintiff                :
                                       :    No. 1:CV-00-0543
       v.                              :
                                       :    (Judge Rambo)
FRANK GILLIS, et al.,                  :
                                       :    (Jury Trial Demanded)
              Defendants               :

## DECLARATION OF CHARLES A. MYERS

I, Charles A. Myers, do hereby state under penalty of perjury that the following is true and correct based upon my personal knowledge:

1.      I have worked at the Pennsylvania Board of Probation and Parole for 28 years.

2.      I was a parole staff specialist from 1989 to 1993. From 1993 to the present, I have been a parole manager 1 in Case Management. I am currently Acting Division Director, Case Management Division, Board of Probation and Parole.

3.      As Acting Division Director, I am responsible for units that calculate maximum sentence dates for parole violators.

4.      Effective October 3, 1991, Brady Davis, BX-3685, was sentenced in Philadelphia to 3.5 to 7 years in prison for possession of a controlled substance. Ex. A.

5.      Therefore, Davis' original minimum date was April 3, 1995 and his original maximum date was October 3, 1998. Ex. A.

6.      In April 1995, Davis was refused parole. Ex. B.

**Davis v. Gillis, et al.**                                              **Declaration of Charles A. Myers**
**No. 1:CV-00-0543 (M.D.Pa.)**

7.    In July 1995, Davis was released on parole subject to various conditions

governing his parole including that he not commit any crimes and, if he is arrested, that he report

his arrest to his parole agent.  Ex. C.

8.    On September 18, 1997, Davis was arrested in Montgomery County for theft by

receiving stolen property, unauthorized use of an automobile, fleeing to elude police, and motor

vehicle violations.  Ex. D.

9.    Davis did not report this arrest to his parole agent.

10.    On March 19, 1998, Davis entered a guilty plea for receiving stolen property and

was sentenced to 6 to 23 months in Montgomery County Correctional Facility effective May 19,

1998. Ex. D.

11.    The Montgomery County Court believed that Davis was eligible for work release.

Ex. D.

12.    The Montgomery County Court ordered Davis to begin serving his sentence on

May 19, 1998.  Ex. D.

13.    On May 4, 1998, Davis was arrested by a parole agent, who had learned about

Davis' arrest and conviction in Montgomery County, and was taken to the State Correctional

Institution at Graterford.  Ex. E.

14.    On May 12, 1998, Davis received a parole revocation hearing where he was

recommitted as a technical and convicted parole violator and taken to SCI-Coal Township.  Ex.

E.

**Davis v. Gillis, et al.**                                    **Declaration of Charles A. Myers**
**No. 1:CV-00-0543 (M.D.Pa.)**

15.    Because he was imprisoned in the state system, he could not report to serve his sentence in Montgomery County.

16.    In June 1998, Montgomery County officials lodged a detainer against Davis.

17.    In a Board action recorded on June 5, 1998, Davis was recommitted to serve his unexpired term and 9 months concurrently as a technical and convicted parole violator.  Ex. F.

18.    Because Pennsylvania law requires that a convicted parole violator must serve his new sentence first, Davis was moved back to Montgomery County to serve his new sentence on October 8, 1998, when Pennsylvania Department of Corrections officials at SCI-Coal Township learned of his Montgomery County sentence.  Ex. G.

19.    By agreement with Davis' lawyer, Davis received 5 months and 4 days credit toward his state sentence for the period between May 4, 1998, when the Board warrant was lodged, and October 8, 1998, when he was returned to Montgomery County to serve his county sentence.  Ex. G.

20.    On March 3, 1999, Montgomery County paroled Davis.  Ex. H.

21.    Because his original maximum date was October 3, 1998, and he was paroled on July 17, 1995, Davis had 3 years 2 months and 16 days remaining on his original maximum sentence.  Ex. H.

22.    When Davis' 5 months 4 day credit from May 4, 1998, to October 8, 1998, was subtracted from 3 years 2 months and 16 days remaining on his state sentence when he was paroled in 1995, 2 years 9 months and 12 days remained on his maximum sentence.  Ex. H.

**Davis v. Gillis, et al,**                                    **Declaration of Charles A. Myers**
**No. 1:CV-00-0543 (M.D.Pa.)**

23.     When 2 years 9 months and 12 days are added to March 3, 1999, the date of his

parole from Montgomery County, his new maximum date became December 15, 2001. Id.

24.     Davis' current correct maximum date is December 15, 2001. Id.

25.     The reasons for Davis' current maximum date have been explained to him.  Ex. I.

_9-13-00_
Date                                              Charles A. Myers

**EXHIBIT A**

| DC-16D | COMMONWEALTH OF PENNSYLVANIA  NAS |
|---|---|
| **SENTENCE STATUS SUMMARY** | — DEPARTMENT OF CORRECTIONS  FOC |
| | Replaces form JBC-16C which may be used |

### 1. SENTENCE SUMMARY

| Class of Sentence | ☐ DEFINITE | ☒ INDEFINITE | ☐ GENERAL | ☐ LIFE | ☐ COMMUTED LIFE | ☐ EXECUTION |
|---|---|---|---|---|---|---|

| Date | County | Number, Term Court, Indictment | Type Sent | Minimum Y | M | D | Maximum Y | M | D | Judge | Offense | Offense Tracking Number |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/3/91 | Philadelphia | CP#1375;12/90 | | 3 | 6 | | 7 | | | A. Defino | Poss. C/S | M4598193 |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

| Continued From DC# | Plea  Not Guilty | Total Sentence | 3 | 6 | | 7 | | | Commitment Credit | |
|---|---|---|---|---|---|---|---|---|---|---|
| Fines | | Costs | | | | | Restitution | | | |
| Summary or Remarks on Sentence | | | | | | | | | | |

### 2. DATES SECTION

| Item | Original | Change #1 | Change #2 | Change #3 | Change #4 | Change #5 |
|---|---|---|---|---|---|---|
| DATE OF RECEPTION | 9/1/92 | 5-4-98 | 03/04/99 | — | | |
| EFFECTIVE DATE | 10/3/91 | 10-3-91 | 10/03/91 | | | |
| EXPIRATION OF MINIMUM | 4/3/95 | 4-3-95 | 04/03/95 | | | |
| EXPIRATION OF MAXIMUM | 10/3/98 | 10-3-98 | 10/03/98 | | | |
| EFFECTIVE DATE - PV | x x x x x | PVP | 03/03/99 | | | |
| DELINQUENT TIME | x x x x x | | XXXXXXXX | | | |
| BACKTIME | x x x x x | | 2y9m12d | | | |
| NEW MAXIMUM - PV | x x x x x | | 12/15/2001 | | | |
| SENTENCE CHANGE | x x x x x | | 05/21/99 | | | |
| BASIS FOR CHANGE | x x x x x | | TCV | | | |
| NEW SENTENCE | x x x x x | | 3y6m-7y | | | |

| 1st Release Method—Inst.—Date  Parole 7-19-95 SCICT | 2nd Release Method—Inst.—Date  LEL County · CIFP 10-8-98 | 3rd Release: Method—Inst.—Date | 4th Release Method—Inst.—Date |
|---|---|---|---|

6th: SCI CT 5/20/99

### 3. REFERENCES AND IDENTIFICATION     5B SCICT 5-14-98

| 1st Admission Inst —Date  C/EDCC   9/1/92 | 2nd Admission: Inst.—Date  T/CDCC  9/8/92 | 3rd Admission: Inst —Date  SCIG 12/17/98 | 4th Admission Inst.—Date  SCI  4-26-94 |
|---|---|---|---|
| Prosecuting Police Department  Philadelphia P.D. | Place of Birth  LaGrange, GA | Date of Birth  6/28/51 | Marital Status  Single | R-S  B/M |

| DC Number | PBPP Number | SID Number | Name | | TN | ALIAS |
|---|---|---|---|---|---|---|

| 4. ACTIONS: PENNSYLVANIA BOARD OF PAROLE | | | | 5. ACTIONS: BOARD OF PARDONS | | | |
|---|---|---|---|---|---|---|---|
| Date | Action | Date | Action | Date | Cal Page | | Action |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

### 6. DETAINERS

| Dated | From (Incl Address) | Charging | Indict—Warrant Nos. | Remarks |
|---|---|---|---|---|
| 5-29-98 | Montgomery Co. Ct. of CP | Failure To Appear ( Sentence) | 6471-97 | E2112046 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

### 7. SELECTIVE SERVICE SYSTEM CONTROLS

| ☐ Registered At Time of Reception | ☐ Unregistered At Time of Reception | Remarks |
|---|---|---|

### 8. UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE CONTROLS

| USINS Number | ☐ USINS Notification of No Contemplated Action | ☐ USINS Proceedings Instituted and Pending | ☐ USINS Proceedings Completed Detainer. See Above |
|---|---|---|---|

### 9. NOTIFY IN EVENT OF ILLNESS OR DEATH

| Name | Eurie Davis | Relationship | Mother |
|---|---|---|---|
| Address | 80 E. Springer St.  Phila., PA 19119 | Telephone | 215-848-2328 |

### 10. REMARKS - ATA - ETC.

| 1st Reception | |
|---|---|
| 2nd Reception | |
| 3rd Reception | |
| 4th Reception | |
| Previous DC# | |

**EXHIBIT B**

NOTICE OF BOARD DECISION
PBPP-15 (6/92)

# COMMONWEALTH OF PENNSYLVANIA
## PENNA. BOARD OF PROBATION AND PAROLE

DATE:  042795

CLIENT NAME:  BRADY DAVIS

INSTITUTION:  STATE CORRECTIONAL INSTITUTION COAL TWP.

PAROLE NO :  1362V

INSTITUTION NO :  BX3685

AS RECORDED ON        042795        THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

MODIFY BOARD ACTION OF 04-05-95 TO READ:

REFUSE.
MISCONDUCTS.
SUBSTANCE ABUSE.
HABITUAL OFFENDER.
YOUR NEED FOR COUNSELING.
UNFAVORABLE RECOMMENDATION FROM THE DEPARTMENT OF CORRECTIONS.

MUST PARTICIPATE IN PRESCRIPTIVE PROGRAM PLAN.
YOU MUST MAINTAIN A CLEAR CONDUCT RECORD.

PAROLE ON OR AFTER 07-10-95 TO THE INTENSIVE SUPERVISION DIVERSION RELEASE
PROGRAM PROVIDING THERE ARE NO MISCONDUCTS, YOU REMAIN INVOLVED IN REQUIRED
PROGRAMS, AND YOU HAVE SUBMITTED A MINIMUM OF FIVE LETTERS OF
EMPLOYMENT/VOCATIONAL TRAINING/EDUCATION INQUIRY, ALSO SUBJECT TO AN APPROVED
PLAN.  WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE
DISTRICT OFFICE OR SUB-OFFICE WITHIN 24 HOURS (MONDAYS THROUGH FRIDAY) BETWEEN
THE HOURS OF 8:30 AM - 5:00 PM.

(CONTINUED ON PAGE 2)

JAMES W. RIGGS
BOARD SECRETARY

FILE COPY

NOTICE OF BOARD DECISION
PBPP-15 (6/92)

# COMMONWEALTH OF PENNSYLVANIA
## PENNA. BOARD OF PROBATION AND PAROLE

DATE: 042795

CLIENT NAME: BRADY DAVIS

PAROLE NO: 1362V

INSTITUTION: STATE CORRECTIONAL INSTITUTION COAL TWP.

INSTITUTION NO: 3X3685

AS RECORDED ON    042795    THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

(CONTINUED FROM PAGE 1)

YOU MUST ABIDE BY ALL OF THE SUPERVISION REQUIREMENTS IN THE INTENSIVE SUPERVISION DIVERSION RELEASE PROGRAM.
UPON YOUR RELEASE, AN EVALUATION/DETERMINATION WILL BE MADE AS TO YOUR NEED FOR OUT-PATIENT DRUG AND ALCOHOL TREATMENT.
YOU WILL FOLLOW ALL TREATMENT RECOMMENDATIONS AND INSTRUCTIONS OF THE TREATMENT AND/OR PAROLE SUPERVISION STAFF. YOU WILL BE REQUIRED TO SIGN THE APPROPRIATE RELEASE FORM FOR CONFIDENTIAL INFORMATION.
YOU ARE REQUIRED TO SUBMIT TO URINALYSIS TESTING AND YOU MUST PAY FOR THE COSTS OF THE TESTS (ACT 35).
YOU MUST NOT CONSUME ALCOHOL UNDER ANY CONDITION OR FOR ANY REASON.
YOU MUST MAINTAIN EMPLOYMENT APPROVED BY PAROLE SUPERVISION STAFF.
YOU SHALL PAY A MONTHLY SUPERVISION FEE OF $25.00 TO THE PAROLE BOARD WHEN UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

(CAM 04-27-95)

MAX. IS 10-03-98.

*James W. Riggs*

JAMES W. RIGGS
BOARD SECRETARY

FILE COPY

**EXHIBIT C**

Pennsylvania ...
PBPP-10 rev 3/88)

 

### ORDER TO RELEASE ON PAROLE/REPAROLE

The Pennsylvania Board of Probation and Parole hereby grants parole/reparole to the prisoner named and on the sentences described below. It further ordered that he/she be released on the date indicated below, subject to Board approval of a satisfactory plan and to the Conditions Covering Parole/Reparole (PBPP-11) and upon condition that he/she commits no misconducts or crimes, and that no evidence of past crimes or mental illness, previously undiscovered, comes to light.

| Name of Prisoner | ParNo. | Inst.No. | Authorized Date of Release |
|---|---|---|---|
| BRADY DAVIS | 1362V | BX3685 | 07-10-95 * |

| Place of Confinement | Date of Return (Reparole Cases Only) |
|---|---|
| SCI — COAL TOWNSHIP | |

| County | Date of Sentence(s) | Tp Term(s)/Indictment Number(s) | OTN(s) | Offense(s)/Charge(s) |
|---|---|---|---|---|
| A. PHILAD | 10/03/91 | CC CP 901201375 | M4598193 | POSS C/S |

| Judge(s) | Term(s) of Sentence(s) | | Expiration Dates Minimum    Maximum |
|---|---|---|---|
| A. ANTHONY DEFINO | 3YR  6MO | 7YR | 04/03/95   10/03/98 |

* TO THE INTENSIVE SUPERVISION DIVERSION RELEASE PROGRAM PROVIDING THERE ARE NO MISCONDUCTS, YOU REMAIN INVOLVED IN REQUIRED PROGRAMS, AND YOU HAVE SUBMITTED A MINIMUM OF FIVE LETTERS OF EMPLOYMENT/VOCATIONAL TRAINING/EDUCATION INQUIRY, ALSO SUBJECT TO AN APPROVED PLAN. WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE DISTRICT OFFICE OR SUB OFFICE WITHIN 24 HOURS (MONDAY THROUGH FRIDAY) BETWEEN THE HOURS OF 8:30 AM – 5:00 PM.





of    April, 1995 at Harrisburg, PA

Board Chairman
SEAL

Pennsylvania Board of Probation and Parole
PBPP-11 (Rev. 7/91)

## CONDITIONS GOVERNING PAROLE/REPAROLE

To:    **DAVIS, Brady**                                      Parole No.   **1362-V**

1.  Report in person or in writing within 48 hours to the district office or sub-office listed below, and do not leave that district without prior written permission of the parole supervision staff.

    **"C" STREET SPECIAL INTENSIVE DRUG CENTER**
    **NORTHWEST SPECIAL INTENSIVE DRUG UNIT**
    3300 "C" STREET
    PHILADELPHIA, PA  19134
    PHONE: 215-560-6734/6735

2.  Your approved residence is listed below and may not be changed without the written permission of the parole supervision staff.

    **BRADY DAVIS (Self)**
    1409 E. MT. PLEASANT AVENUE
    PHILADELPHIA, PA  19150
    PHONE: 215-248-7969/242-1829

3.  Maintain regular contact with the parole supervision staff by:
    a.   reporting regularly as instructed and following any written instructions of the Board or the parole supervision staff.
    b.   notifying the parole supervision staff within 72 hours of: (I) your arrest; or (2) your receipt of a summons or citation for an offense punishable by imprisonment upon conviction; and
    c.   notifying the parole supervision staff within 72 hours of any change in status, including, but not limited to, employment, on-the-job training, and education.

4.  Comply with all municipal, county, state and Federal criminal laws, as well as the provisions of the Vehicle Code (75 Pa. C.S. § 101 et seq.), and the Liquor Code (47 P.S. § I-I0I et seq.)

5.  You shall:
    a.   abstain from the unlawful possession or sale of narcotics and dangerous drugs and abstain from the use of controlled substances within the meaning of the Controlled Substance, Drug, Device, and Cosmetic Act (35 P.S. § 780-101 et seq.) without a valid prescription;
    b.   refrain from owning or possessing any firearms or other weapons; and
    c.   refrain from any assaultive behavior.

6.  You shall pay fines, costs, and restitution imposed on you by the sentencing court. You shall establish with appropriate county authorities within thirty (30) days of your release from prison a payment schedule for the fines, costs and restitution owed for those cases for which you are now on state parole. Thereafter, you shall:
    a.   pay these obligations according to the established payment schedule or as ordered by the court;
    b.   provide proof of such payment to parole supervision staff; and
    c.   keep the parole supervision staff and the court informed of any changes in your financial ability to pay fines, costs and restitution.

7.  You shall comply with the special conditions listed on page 2 imposed by the Board and with special conditions imposed by the parole supervision staff.

Additionally, should problems arise, or questions occur concerning the conditions of your parole/reparole, consult with the parole supervision staff, and they will help you in the interpretation of the Conditions of Parole/Reparole.

If you are arrested on new criminal charges, the Board has the authority to lodge a detainer against you which will prevent your release from custody, pending disposition of those charges, even though you may have posted bail or been released on your own recognizance from those charges.

If you violate a condition of your parole/reparole and, after the appropriate hearing(s), the Board decides that you are in violation of a condition of your parole/reparole you may be recommitted to prison for such time as may be specified by the Board.

If you are convicted of a crime committed while on parole/reparole, the Board has the authority, after an appropriate hearing, to recommit you to serve the balance of the sentence or sentences which you were serving when paroled/reparoled, with no credit for time at liberty on parole.

If you think that any of your rights have been violated as a result of your parole supervision, you may submit a timely complaint in writing, first to the district director of the district office through which you are being supervised. If your complaint is not resolved to your satisfaction, you may then submit your complaint in writing to the Pennsylvania Board of Probation and Parole, Director of Supervision, P.O. Box I66I, Harrisburg, Pennsylvania 17105-1661

In consideration of being granted the privilege of parole/reparole by the Pennsylvania Board of Probation and Parole, I hereby agree that:

If I am ever charged with a parole violation arising out of my conduct while in a jurisdiction other than the Commonwealth of Pennsylvania, the revocation of my parole for that violation may be based solely on documentary evidence and I hereby waive any right to confront or cross-examine any person who prepared any such documentary evidence or who supplied information used in its preparation;

I expressly waive extradition to the Commonwealth of Pennsylvania from any jurisdiction in or outside of the United States, where I may be found, and I shall not contest any effort by any jurisdiction to return me to the United States or to the Commonwealth of Pennsylvania; and

I expressly consent to the search of my person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole. Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process.

PBPP-11 (Rev. 10/93)                                                    Page 2 of 2 Pages

To: BRADY DAVIS              Parole No. 1362V        InstNo: BX3685

7. SPECIAL CONDITIONS:

002
YOU MUST ABIDE BY ALL OF THE SUPERVISION REQUIREMENTS IN THE INTENSIVE
SUPERVISION DIVERSION RELEASE PROGRAM.
UPON YOUR RELEASE, AN EVALUATION/DETERMINATION WILL BE MADE AS TO YOUR NEED FOR
OUT-PATIENT DRUG AND ALCOHOL TREATMENT.
YOU WILL FOLLOW ALL TREATMENT RECOMMENDATIONS AND INSTRUCTIONS OF THE
TREATMENT AND/OR PAROLE SUPERVISION STAFF. YOU WILL BE REQUIRED TO SIGN THE
APPROPRIATE RELEASE FORM FOR CONFIDENTIAL INFORMATION.
YOU ARE REQUIRED TO SUBMIT TO URINALYSIS TESTING AND YOU MUST PAY FOR THE
COSTS OF THE TESTS (ACT 97-2).
YOU MUST NOT CONSUME ALCOHOL UNDER ANY CONDITION OR FOR ANY REASON.
YOU MUST MAINTAIN EMPLOYMENT AS APPROVED BY PAROLE SUPERVISION STAFF.
YOU SHALL PAY A MONTHLY SUPERVISION FEE OF $25.00 TO THE PAROLE BOARD WHEN
UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

_____            _____ PAI
Signature of Parolee                        Witness

7-17-95
_____            _____
Date                                        Witness

Note: If signed by mark, there must be
two witnesses to the execution of the
instrument.

PBPP-75 (6/92)



## COMMONWEALTH OF PENNSYLVANIA
### Board of Probation and Parole

P.O. Box 1661
3101 North Front Street
Harrisburg, PA 17105-1661

July 19, 1995

The Honorable Anthony Defino
1411 One East Penn Square Building
Philadelphia, PA  19102

Client Name: **Brady Davis**
Parole No.:  **1362-V**

Dear Judge

You are hereby advised that the above-named individual was released on parole to a plan and parole conditions as outlined on the attached parole release orders.

For your information only, we have already forwarded a copy of this letter to the county agency responsible for the collection of fines, costs and restitution requesting that they advise us within thirty (30) days as to the amount of any fines(s), costs and restitution owed by the client.  The amounts should pertain only to the sentence(s) imposed by your court, for which parole was granted by our Board.  The agency's response should be directed to the Parole Office identified on the attached parole release orders.  It should contain a breakdown of the amount(s) owed, and the office and address where the payments are to be made.  The Board's Field Staff shall, through the supervision process, make every reasonable effort to have client pay these amounts, as ordered by the court.

Be assured of our continued cooperation in all matters of mutual concern.

Very truly yours,

FOR THE BOARD

James W. Riggs
Board Secretary

cc: Central Office,
    District Office
    Collection Agency
    File

**EXHIBIT D**

1362-V

APO Form 39-97

## APPLICATION FOR COUNTY PAROLE

## MONTGOMERY COUNTY ADULT PROBATION AND PAROLE DEPARTMENT
P.O. Box 311, Norristown, PA. 19404

COMMONWEALTH OF PENNSYLVANIA
-VS-

99 MAR -1 AM 9:05

BRADY L. DAVIS
(Defendant)

| TERM & NO. | SENTENCING JUDGE: |
|---|---|
| 6471-97 | HONORABLE PAUL W. TRESSLER |

ALIAS:

| RACE | SEX | DOB | AGE | POB | PRESENTLY CONFINED AT |
|---|---|---|---|---|---|
| BLK | MALE | 6/28/51 | 48 | GEORGIA | M.C.C.F. |

### SENTENCING DATA

| OFFENSE | SENTENCE |
|---|---|
| R.S.P. | 6 - 23 MONTHS |

| DATE OF SENTENCE | EFFECTIVE DATE | MINIMUM SENTENCE | MAXIMUM EXPIRATION |
|---|---|---|---|
| 3/19/98 | 5/19/98 | 3/3/99 G.T. | 9/8/00 |

| DETAINERS | FINES | COSTS | RESTITUTION |
|---|---|---|---|
| N/A | $300.00 | PAY BALANCE | N/A |

RELEASE PLAN:

***PAPER PAROLE TO STATE PAROLE DETAINER***

*true and correct Copy Certified from the record This 3rd Day of Mar A.D. 19 99 ... 10. Tracking Clerk of Courts MLP*

| HOME (ADDRESS) | 1409 E. MOUNT PLEASANT AVE. PHILA., PA 19150 | WITH SELF | RELATIONSHIP N/A |
|---|---|---|---|

| EMPLOYMENT WITH: | TYPE OF JOB | SALARY |
|---|---|---|
| BRADY DEVELOPMENT CO. PHILA., PA | DEVELOPER | $200,000.00 PER YR ? |

| ASSETS | OFFENDER REGISTRATION |
|---|---|
| Money on Deposit at Prison: | DNA  Yes ☐  No ☑    MEGAN'S LAW  Yes ☐  No ☑ |

I hereby apply for parole and certify that I have read the above statements and they are true and correct to the best of my knowledge and belief.

Signature of Inmate _Brady Davis_

| FOR CORRECTIONAL FACILITY | APPROVAL |
|---|---|
| NAME GUS BALDASSANO, CASEWORKER/COUNSELOR/DP | MICHAEL F. HAMEL, CHIEF ADULT PROBATION OFFICER |
| DATE 2-22-99   SIGNATURE _Gus Baldassano_ | DATE 4/5/99   SIGNATURE _Michael J. Hamel_ |

### ORDER

Upon consideration of the above application for parole, the application of __BRADY L. DAVIS__

for release from imprisonment under supervision of the Montgomery County Adult Probation and Parole Department for the remainder of the maximum sentence is

☐ DENIED          ☑ GRANTED

It is further ordered that the Warden of __MONTGOMERY COUNTY CORRECTIONAL FACILITY__ will effect the release of said inmate

on _____3-3-99_____

2/26/99
(Date)                          (Judge)

| COMMONWEALTH OF PENNSYLVANIA<br>BOARD OF PROBATION AND PAROLE<br>PBPP-257DR<br><br>FINAL | **DISPOSITION**<br>**REPORT** | | ☒ BOARD PAROLE<br>☐ SP PROB/PAROLE<br>☐ OTHER STATE PAROLE<br>☐ OTHER STATE PROB |
|---|---|---|---|

| CLIENT NAME (Last, First, Middle Initial)<br><br>DAVIS        BRADY | PAROLE NO.<br><br>1362-V | SID NO.<br>09857338<br>PPN# 432 070 | INST & NO.<br>SCI-Coal Township<br><br>BX-3685 |
|---|---|---|---|

## COURT OF RECORD

| DATE OF ARREST<br>9-18-97 | ARREST #<br>1 | DATE OF ARREST | ARREST # | DATE OF ARREST | ARREST # |
|---|---|---|---|---|---|
| COUNTY/INDICTMENT NO./CHARGES<br><br>Montgomery County<br>Docket Information<br>Bill Number 6471-97 | | COUNTY/INDICTMENT NO./CHARGES<br><br>Receiving Stolen Property F-3<br>Unauthorized Use Of Auto  M-2<br>Fleeing To Elude Police Officer  M-2 | | COUNTY/INDICTMENT NO./CHARGES | |
| DATE BAIL POSTED<br>9-19-97 | DATE BAIL REVOKED | DATE BAIL POSTED | DATE BAIL REVOKED | DATE BAIL POSTED | DATE BAIL REVOKED |
| JUDGE<br>Paul J. Tressler | | JUDGE | | JUDGE | |
| VERDICT & DATE<br>Guilty  3-19-98 | | VERDICT & DATE | | VERDICT & DATE | |
| CONV. OFFENSE & SEVERITY<br>Receiving Stolen Property F-3 | | CONV. OFFENSE & SEVERITY | | CONV. OFFENSE & SEVERITY | |
| VERIFICATION DATE<br>4-7-98 | | VERIFICATION DATE | | VERIFICATION DATE | |
| SENTENCE DATE<br>3-19-98 | | SENTENCE DATE | | SENTENCE DATE | |
| EFFECTIVE SENTENCE DATE<br>3-19-98 | | EFFECTIVE SENTENCE DATE | | EFFECTIVE SENTENCE DATE | |
| SENTENCE<br>6-23 Months<br>$300.00 fine and court costs | | SENTENCE | | SENTENCE | |
| INSTITUTION OF SENTENCE<br>Montgomery County<br>Correctional Facility | | INSTITUTION OF SENTENCE | | INSTITUTION OF SENTENCE | |

**DETAILS OF CONVICTION** (Include official version and circumstances of offense(s) which led to a conviction in a court of record and any plea bargain information - use attached sheet if necessary)

Subject did enter a guilty plea on 3-19-98 for Receiving Stolen Property F-3 in a waiver trial before the Honorable Judge Paul J. Tressler at the Montgomery County Courthouse.  Subject received 6 to 23 Months at the Montgomery County Correctional Facility effective on 5-19-98 and was eligile for work release.  Due to a letter that was sent to Judge Tressler, subject will not be reporting for his sentence.

| **RECOMMENDATION:** CONTINUE UNDER SUPERVISION ☐ | RECOMMIT/REVOKE ☒ | TECH. VIOLATION(S) CHARGED ☒ YES ☐ NO |
|---|---|---|
| REASON(S)<br>New Criminal Conviction | | |

| REVOCATION HEARING SCHEDULED YES ☒    NO ☐ | OPEN CHARGES YES ☐    NO ☒ | |
|---|---|---|
| AGENT NAME/SIGNATURE/DATE<br>*Kenneth Brown*<br>Kenneth Brown        5/8/98 | SUPERVISOR NAME/SIGNATURE/DATE<br>*B. D. Neal* 5/8/98 | OFFICE NAME: 01-Tioga<br>Sub Office    NW#1 |

# TRIAL/PLEA/SENTENCE

Bill of Info. No. _____ AND NOW, _3 - 19 - 98_ ,

☐ Defendant is sentenced to undergo **Imprisonment** for not less than_____ years nor more than_____ years in such State Correctional Institution as shall be designated by the Deputy Commissioner for Programs, Department of Corrections, and sent to the Correctional Diagnostic and Classification Center at **Camp Hill/ Muncy** for this purpose. Commitment to date from_____ ☐ **Consecutive/concurrent** to all previously imposed sentences ☐ Not serving any other sentence.
Credit for time served from _____
☐ Eligible for Boot Camp    ☐ Costs on the County

_6471-97_ ☑ Defendant is sentenced to undergo **Imprisonment** for not less than _6_ months nor more than_23_ months in the Montgomery County Correctional Facility.
Commitment to date from_5-19-98_ ☐ **Consecutive/concurrent** to all previously imposed sentences
☐ Not serving any other sentence   _6:00 p.m._
Credit for time served from _____
☒ Eligible for Work Release   ☐ Litter pick up   ☐ **Is not** eligible for good-time credit
☐ Paroled from the Bench   ☐ Costs on the County

☐ Defendant is sentenced to **Intermediate Punishment** for a period of_____ months; the first _____ months of which is to be served in the following Restrictive Intermediate Punishment Program:
☐ Work Release   ☐ House Arrest/Electronic Monitoring   ☐ Inpatient Treatment

☐ Defendant is sentenced to **Restorative Sanctions - Probation and/or** _____ for a period of _____ months/years in the custody of:
☐ Montgomery County Adult Probation/Parole Dept.   ☐ PA Board of Probation and Parole
☐ **Consecutive/concurrent** to_____ .   ☐ To date from: _____

_6471-97_ ☑ Defendant is sentenced to pay the costs of prosecution, and a fine of $_300.00_ and restitution of $__X X__ to __X X__ within the first _23_ months of ~~supervision release from custody in~~ monthly installments as directed.

☐ Determination of guilt without further penalty.
☐ Bills merge for sentencing purposes.

| CONCURRENT SENTENCE | CONSECUTIVE SENTENCE |
|---|---|
| Information No. _____ | Information No. _____ |
| AND NOW _____ sentence is | AND NOW _____ sentence is |
| _____ | _____ |
| _____ | _____ |
| and is to run concurrently with sentence imposed | and is to run consecutively with sentence imposed |
| on Info. # _____ | on Info. # _____ |

## SPECIAL CONDITION(S) OF SENTENCE(S)

☐ Outpatient treatment   ☐ Inpatient treatment   ☐ PPI evaluation and recommended treatment
☐ CRN evaluation and treatment   ☐ Safe Driving School   ☐ Transfer to State of: _____
☐ DNA sample and registration   ☐ Comply with Megan's Law 42 PA. C.S. 9793 registration requirements.
☐ Community service:_____ hours at site to be determined by the Montgomery County Adult Probation/Parole Dept. or the PA Board of Probation and Parole.
☑ Defendant shall comply with any special conditions of probation/parole/intermediate punishment imposed by the Montgomery County Adult Probation/Parole Dept./ the ~~PA Board of Probation and Parole~~.
☑ Defendant shall pay the $25.00 per month offender supervision fee.   ☐ Offender supervision fee waived.
☐ Other: _____

BY THE COURT: _____

# TRIAL/PLEA/SENTENCE

COMMONWEALTH OF PENNSYLVANIA
VS

*Brady L. Davis*

CHARGES AND BILL(S) OF INFORMATION
6471-97 TRSP
1 unauth. use of m. v.

(S II)

|  | TRIAL | OPEN GUILTY PLEA | SENTENCE |
|---|---|---|---|
| DATE | | 3-19-98 | |
| JUDGE | | Tressler | |
| COURT ROOM | | 6 | |
| COMMONWEALTH'S ATTORNEY | | S. Fairlie | |
| DEFENDANT'S ATTORNEY | | Brian Whiley | |
| COURT REPORTER | | G Corcoran | |
| COURT CLERK | | S Bertucci | |

AND NOW, _____ March 19, 1998_____

[✓] The Court finds that the defendant has knowingly, intelligently and voluntarily entered a plea of guilty with reference to the following Bills of Information and the Court accepts the guilty plea _6471-97 TRSP_    F3

[✓] The Court accepts the terms of the plea agreement and sentence will be imposed in accordance with it.

[✓] The motion of the District Attorney to nol pros the following Bill(s) of Information is granted:
_____ Costs on: [✓] Defendant [ ] County

   [ ] The Court sustains a motion for judgment of acquittal as to Bill(s) of Information:_____
   [ ] The Court overrules a motion for judgment of acquittal as to Bill(s) of Information:_____

[ ] After trial, the Jury/Court finds the defendant:
   Guilty of the following Bill(s) of Information_____
   Not guilty of the following Bill(s) of Information_____

   Jury Sworn:_____ Jury Returns:_____ Trial Days:_____

[✓] For reasons appearing on the record the Court directs that the defendant forthwith register with the Adult Probation Department for:
   [ ] PPI Evaluation [ ] House Arrest Suitability Assessment [ ] Sexually Violent Predator Assessment
   [ ] Pre-Sentence Investigation and Report [✓] Commencing Supervision (42 Fa. C.S., Chapter 97)

[ ] Sentence deferred: Defendant remanded without bail/released on same bail/remanded pending posting of bail in the increased amount of $ _____, pending sentencing.

Special Conditions:_____

This 7th day April A.D. 19 98

_____ Clerk

[ ] Defendant's PA driver's license [ ] Attached [ ] to be surrendered by_____
   [ ] affidavit submitted

BY THE COURT:_____

**EXHIBIT E**

PBPP 344 (Rev. 11/94)

## PENNSYLVANIA BOARD OF PROBATION AND PAROLE

TAPE NO. BM 238                    HEARING REPORT

PANEL    [ ] Yes   [X] No

Parolee Name:  BRADY DAVIS                        Parole No.:  1362-V

Hearing Site:  SCIG                                Date:  5-12-98

Type of Hearing:  [X] Violation   [X] Revocation  [ ] Recission  [ ] Detention

Parole Agent:  K. Brown                    [X] Present    [ ] Not Present

Counsel:    John D'Lauro                  [ ] Public Defender [X] Private

Address:    1429 Walnut Street, Suite 801

            Philadelphia, PA  (215) 564-4800

WITNESS INFORMATION:  (Name and Addresses)

For Parole Agent                    For Defense
                                    Juanita Hammibal
                                    1409 W. Mt. Pleasant Avenue
                                    Philadelphia, PA

Oath administered to all witnesses who testified:  YES [X]    NO [ ]

| Date of:<br>Arrest By Police: 9-11-97,<br>Arrest By Agent:  5-4-98<br>Board Warrant:  5-4-98 | Prior Continuances Granted<br><br>Date(s): _____, _____, _____ |

        (PBPP-340 dated:    5-4-98              )

TECHNICAL CONDITION(S): 1. 2.  3a. (3b) 3c. 4.  5a.  5b.  5c.  6a. .6b. 6c. 7.
                             (circle conditions charged)
Time owed as a technical parole violator:_____

NEW CONVICTIONS:  YES [X]  NO [ ]   See PBPP-340 dated:  5-4-98

Time owed as a Convicted Parole Violator:_____
Date of Official Verification of Convictions:      4-7-98
Date of return to SCI:  5-4-98

PENDING CRIMINAL CHARGES:  NONE.

  County                      Offense(s)

STATES EVIDENCE    (Violation and Revocation Hearing)

Conditions Admitted:  1.  2.  3a.  3b.  3c.  4.  5a.  5b.  5c.  6a.  6b.  6c.  7.

Parolee admitted technical violation as charged.

Agent Brown testified that parolee was arrested 9-18-97 in Montgomery County and
charged with RSP, Unauthorized Use of Auto and Fleeding/Eluding Police Officer and
was subsequently convicted of RSP on 3-19-98 as to Indictment No. 6471-97.  Parolee
was sentenced to 6 to 23 months and ordered to pay fines and costs.  Agent Brown
presented as States Exhibit 1 certified copies of conviction.

Objections:    YES [ ]        NO [X]        Ruling
    (List Objections)

---

DEFENSE EVIDENCE

Mrs. Hannibal was called and sworn in as a witness.  She introduced as Defense
Exhibit 1 a letter from Philadelphia County Council on behalf of the parolee.  She
testified that while on parole, she became engaged with the parolee.  He established
several businesses and has bettered himself and the community.  She continues to
maintain a home for the parolee and the 4 children residing in that home.

Parolee testified he had been placed on work release as result of his recent
conviction.  He claimed he was unaware the vehicle he was driving was stolen.

Objections:        YES [ ]      NO [X]        Ruling
    (List Objections)

NEW CRIMINAL CONVICTIONS   (List all convictions for which preponderance is established)

| Arrest | Convictions | Presumptive Range | Arrest | Convictions | Presumptive Range |
|--------|-------------|-------------------|--------|-------------|-------------------|
| 1 | _I.S.P. (S-3)_ | _6 - 12_ | 4 | _____ | _____ |
| 2 | _____ | _____ | 5 | _____ | _____ |
| 3 | _____ | _____ | | Aggregated Range | _____ |

TECHNICAL PAROLE VIOLATIONS

| No Prep. | Preponderence | Single Violations | Multiple Violations | Reasons for TPV/CPV decisions |
|----------|---------------|-------------------|---------------------|-------------------------------|
| [ ] | [ ] Condition #1 | 6 -12 months | 6 - 18 months | [ ] Early failure on parole/reparole |
| [ ] | [ ] Condition #2 | 6 - 9 months | 6 - 18 months | [ ] Pattern of parole failure in your |
| [ ] | [ ] Condition #3A | 3 - 6 months | 6 - 18 months | criminal history record |
| [ ] | [X] Condition #3B | 3 - 6 months | 6 - 18 months | [ ] Not amenable to parole supervision |
| [ ] | [ ] Condition #3C | 3 - 6 months | 6 - 18 months | [ ] Prior parole/probation failure |
| [ ] | [ ] Condition #4 | 3 - 9 months | 6 - 18 months | [X] You are considered a threat to the |
| [ ] | [ ] Condition #5A | 5 -12 months | 6 - 18 months | safety of the community |
| [ ] | [ ] Condition #5B | 6 -12 months | 6 - 18 months | [X] Conviction in court of record estb. |
| [ ] | [ ] Condition #5C | 6 -18 months | 6 - 18 months | [ ] Declared delinquent by the Board |
| [ ] | [ ] Condition #6 | 0 - 6 months | | [ ] Failure to comply with sanctions |
| [ ] | [ ]* Condition #7 | 3 -18 months | Aggregate | [X] Other _Violation established_ |

*Are SPECIAL CONDITION(s) violated DRUG related condition? [ ] Yes  [ ] No
*Are SPECIAL CONDITION(s) violated ALCOHOL related conditions? [ ] Yes  [ ] No
Evidence relied upon: [Check( )applicable evidence as it relates to specific individual conditions.]

Direct:
[X] Client Admission          [Cond. _3b_
[ ] Prior Client Admission    [Cond.
[ ] Parole Agent's Testimony  [Cond.
[ ] Testimony of _____      [Cond.

Documentary:
[X] Certified copy of Court Record proving conviction(s)
[ ] Records of District Justice ( _S-2_ )
[ ] Lab Report _____ )
[ ] Affidavit of _____  _6471 - 97_ )
[ ] PBPP Form # _____ )
[Cond.
[Cond.

TPV/CPV Mitigation  (if below range)
----------------------------
----------------------------
----------------------------

TPV/CPV Aggravation  (if above range)
----------------------------
----------------------------
----------------------------

## BOARD DECISION

[ ] Continue on Parole (preponderance found) (Check appropriate conditions under reparole section.)
     There must be verification of an approved plan.  With Whom: _____
                                                       Address: _____
                                                                _____

[ ] Continue on Parole (preponderance NOT found) (Check appropriate conditions under reparole section.)
[X] Recommit as a TPV (when available) to serve __6__ months (and/or)
[X] Recommit as a CPV (when available) to serve __6__ months (and/or)  } _2 nd Review_
[ ] Recommit as a TPV/CPV and reparole (Requires mitigation).
[ ] ISO U for _____ months or until _____ Mo/Yr
[ ] Detain [ ] Continue on parole pending disposition of criminal charge(s).
[ ] Refer to Board Action of _____, and now...
[ ] Other

While confined you must:
[X] comply with the institution's prescriptive program requirements and have no misconducts.
[ ] participate in sex offender treatment
[ ] participate in mental health counseling


Reparole Special Condition(s): [Check ( ) appropriate special conditions].
[ ] In-Patient program only. (To be used only if acceptance into the program has been verified).

( ) Removal or termination from the program for any reason other than successful
    completion is a violation of your parole.

( ) When released to parole supervision, after successful completion of the in-patient
    program, you must comply with the following special conditions of parole.

[ ] You must abide by all of the supervision requirements in the Intensive Supervision Diversion
    Program.

[ ] Upon your release, an evaluation/determination will be made as to your need for _____
    treatment. You will follow all treatment recommendations and instructions of the treatment
    and/or supervision staff. You will be required to sign the appropriate release form
    for confidential information.

[ ] You must cooperate with TASC-SCI and follow all treatment recommendations.

[ ] You must achieve negative results in screening tests randomly applied for the detection of
    the presence of controlled substances or designer drugs and you must pay for the costs
    of the tests. (Act 97-    ).

[ ] You must submit to urinalysis testing.

[ ] You must not consume alcohol under any conditions or for any reason.

[ ] You must not contact or associate with _____ for any reason.

[ ] You must take psychotropic medication if prescribed by your doctor.


[ ] Other: _____


PANEL MEMBERS: _____

_Ben Martinez_____    _____    _5/10/00_
(Print Name)            (Signature)              (Date)

_____    _____    _6/5/00_
(Print Name)            (Signature)              (Date)

**EXHIBIT F**



NOTICE OF BOARD DECISION
PBPP-15(8/96)

**COMMONWEALTH OF PENNSYLVANIA**

**PENNA. BOARD OF PROBATION AND PAROLE**

DATE: 072498

CLIENT NAME: **BRADY DAVIS**

PAROLE NO: **1362V**

INSTITUTION:
SCI - COAL TOWNSHIP
SCI COAL TWP. CASE

INSTITUTION NO: **BX3685**

AS RECORDED ON 060598   THE BOARD OF PROBATION AND PAROLE RENDERED THE
FOLLOWING DECISION IN YOUR CASE:

- RECOMMIT TO A STATE CORRECTIONAL INSTITUTION WHEN AVAILABLE AS A TPV TO
SERVE UNEXPIRED TERM AND AS A CPV TO SERVE 9 MONTHS CONCURRENTLY, FOR A
TOTAL OF 9 MONTHS ON BACKTIME.
    UNEXPIRED TERM FOR VIOLATION OF CONDITION #3B, FAILURE TO NOTIFY PAROLE
SUPERVISION STAFF WITHIN 72 HOURS OF ANY ARREST.  EVIDENCE RELIED UPON:
YOUR ADMISSION.  REASONS:  YOU ARE CONSIDERED A THREAT TO THE SAFETY OF
THE COMMUNITY.  VIOLATION ESTABLISHED.
    9 MONTHS FOR THE OFFENSE OF RECEIVING STOLEN PROPERTY.  EVIDENCE RELIED
UPON:  CERTIFIED COPY OF COURT RECORD PROVING CONVICTION.  REASON:
CONVICTION IN COURT OF RECORD ESTABLISHED.
WHILE CONFINED, YOU MUST COMPLY WITH THE INSTITUTION'S PRESCRIPTIVE PROGRAM
REQUIREMENTS AND HAVE NO MISCONDUCTS.
(HR 5/12/98) (RS)
    IF YOU WISH TO APPEAL THIS DECISION, YOU MUST FILE A REQUEST FOR ADMINISTRA-
TIVE RELIEF WITH THE BOARD WITHIN THIRTY DAYS OF THIS ORDER.  THIS REQUEST
SHALL SET FORTH SPECIFICALLY THE FACTUAL AND LEGAL BASIS FOR THE ALLEGA-
TIONS.  SEE 37 PA CODE SEC. 73.  YOU HAVE THE RIGHT TO AN ATTORNEY
IN THIS APPEAL AND IN ANY SUBSEQUENT APPEAL TO THE COMMONWEALTH COURT.
                  DATE MAILED    AUG 12 98

CC: JOHN D'LAURO, ESQUIRE
CC: SUPERINTENDENT
CC: SUB-OFFICE TIOGA

FILE COPY *

W. CONWAY BUSHEY
BOARD SECRETARY

**EXHIBIT G**



COMMONWEALTH of PENNSYLVANIA

**Board of Probation and Parole**

1101 South Front Street
Suite 5300
Harrisburg, PA 17104-2519

December 9, 1998

John F. Haskins, Esq.
43 E. Marshall Street
Norristown, PA 19401-4828

Re: Brady Davis
Parole No. 1362-V

Dear Attorney Haskins:

This will acknowledge your letter of 12-1-98 on the above-named subject regarding the calculation in his case.

Mr. Davis was arrested in Montgomery County on 9-18-97 and never advised his parole agent of this arrest. He was convicted and sentenced on 3-18-98 on Montgomery County #6471-97 and sentenced to 6 to 23 months in Montgomery County Prison, effective 5-19-98.

On 5-4-98, his was arrested by his parole agent for violation of condition #3b and for a conviction in a court of record. He was lodged at SCIGraterford where a violation/revocation hearing was conducted on 5-12-98. The Board action of 6-5-98 was to recommit as a technical and convicted parole violator to serve 9 months backtime, when available.

He was moved by the Department of Corrections from SCIGraterford to SCICoal Twp. On 5-14-98. When Coal Twp realized he had a county prison sentence to serve they sent him back to Montgomery County Prison. Therefore, he will receive credit toward his Board backtime from 5-4-98 (the date the Board warrant was lodged) until 10-8-98 (the date he was returned to Montgomery County Prison).

I trust this answers your questions.

Sincerely,

(Mrs.) Adair L. Dolbin
Parole Manager

cc: file

**EXHIBIT H**

`·14·99`

Commonwealth of Pennsylvania
Board of Probation and Parole
PBPP-165C   Rev. 10/91          RECOMMITMENT DATA - CPV

D-C-C ____ Graterford

DISTRICT ____ Philos.

ATTY: John O'Lawn
1429 Walnut St., Suite 801          Client's Copy          DATE ____ 4-14-99
Phila, Pa., 19102

NAME: Brady Davis          Parole No. 1362-V       INST. NO. BX-3635

S.I.D. No. ____          County, Bill & Term, & O.T.N. ____

(9 mos.)

                         TPV 6 mos, CPV 9 mos (Delinquent ____ )   - Review
                         (4 mos 14 days)   Concurrently for a Total of 4 mos.
Maximum: ____ 98-10-3                    Custody for Ret. ____ 99-3-3
-Eff. Date of                            -Date of
(Parole)/Return/Delinq. ____ 95-7-17     Delinquency (Parole) ____ 95-7-17
                         3-2-16                                   3-7-16
+Constructive Parole Time ____

-Confinement Time ____

-Backtime Served ____ 0-5-4                              0-5-4

=B.T.O. ____ 2-9-12          =Time Lost ____ 3-2-12

+Eff. date
of Return ____ 99-3-3        +Original Max.: ____ 98-10-3

=New Max.: ____ 2001-12-15   =New Max.: ____ 2001 12-15

Conviction Resulting                     Credit Due on
in Recommitment: 3-19-98, Montgo. Co., # 6471-97, 6 to   New Sentence: ____

23 mos, Montgomery C.P.; Paroled 3-3-99 ____

____

Also Recommit On: ____

____

257 DR-5-8-98                    TPV Time              ASP, Unauthorized Use of Au
& Revoking Order 2-26-99         98-10-3               Fleeing to Elude P.O. Motor Ve
                                 98-5-4                                          Code, M.
                                 0-4-29    Montgo. Co. - Arrest-9-18-97          Code Vio
                                           Bnd - yes
                                                      9-8-97

                                           Arrest   > 8-4-98 / 25
                                           Bd. Wt.              8-6

99-3-3
0-9-0
99-12-3

98-10-8
98-5-4
0-5-4 BTS



BOARD OF PROBATION AND PAROLE

| | | | |
|---|---|---|---|
| Name: | BRADY DAVIS | District: | #1 |
| Parole No.: | 1362-V | Parole Date: | 7/17/95 |
| Inst. Paroled From: | SCI-COAL TOWNSHIP | Inst. No.: | BX3685 |
| S.I.D. No.: | 09857338 | County, Bill & Term & OTN: | PHILADELPHIA CO. - CP 901201375 |

The above-named individual who was conditionally released on parole by the Pennsylvania Board of Probation and Parole h____ been found by the Board to have violated the conditions of parole. Therefore, the Board, by virtue of the authority conferred on it ____ law, orders said individual recommitted for further imprisonment for the remainder of the unexpired maximum term, or u____ otherwise released or discharged according to law.

Status:    X -TPV    X -CPV

Recommit to:    SCI-GRATERFORD

Maximum:    10/3/98

- Par/Rep/Delinq/
  Bd. Warrant Date:    7/17/95

+ Parole Time Added:

- Confinement Time:

- Backtime Credit:    0y 5m 4d

  Backtime Owed:    2y 9m 12d

+ Custody for Return:    3/3/99

  Recomputed Max.:    12/15/01

Also Recommit On:

Conviction(s) resulting in recommitment:
3/19/98 - MONGOMERY COUNTY
         #6471-97, 6 to 23mos, Montgomery C.P.;
         Paroled 3/3/99

Backtime Dates - From:  5/4/98    To:  10/8/98

Time Lost Due To:
  Delinquency:
  Service of Another Sentence:

Original Minimum Date: 4/3/95

GIVEN under the hand of the Pennsylvania Board of Probation and Parole this

____14th____ day of ____April____ , ____1999____

k11

BY THE BOARD    _William F. Ward_

WILLIAM F. WARD
BOARD CHAIRMAN

Pennsylvania Board of Probation and Parole
PBPP-10(rev 3/88)

ORDER ] RELEASE ON PAROLE/REPAR   ]

The Pennsylvania Board of Probation and Parole hereby grants parole/reparole to
the prisoner named and on the sentences described below. It further ordered
that he/she be released on the date indicated below, subject to Board approval
of a satisfactory plan and to the Conditions Covering Parole/Reparole (PBPP-11)
and upon condition that he/she commits no misconducts or crimes, and that no
evidence of past crimes or mental illness, previously undiscovered, comes to
light.

| Name of Prisoner | ParNo. | Inst.No. | Authorized Date of Release |
|---|---|---|---|
| BRADY DAVIS | 1362V | BX3685 | 07-10-95 * |

| Place of Confinement | Date of Return (Reparole Cases Only) |
|---|---|
| SCI - COAL TOWNSHIP | |

| County | Date of Sentence(s) | Tp Term(s)/Indictment Number(s) | OTN(s) | Offense(s)/Charge(s) |
|---|---|---|---|---|
| A. PHILAD | 10/03/91 | CC CP 901201375 | M4598193 | POSS C/S |

| Judge(s) | Term(s) of Sentence(s) | | Expiration Dates Minimum Maximum |
|---|---|---|---|
| A. ANTHONY DEFINO | 3YR 6MO | 7YR | 04/03/95 10/03/98 |

       * TO THE INTENSIVE SUPERVISION DIVERSION RELEASE
PROGRAM PROVIDING THERE ARE NO MISCONDUCTS, YOU REMAIN INVOLVED IN REQUIRED
PROGRAMS, AND YOU HAVE SUBMITTED A MINIMUM OF FIVE LETTERS OF
EMPLOYMENT/VOCATIONAL TRAINING/EDUCATION INQUIRY, ALSO SUBJECT TO AN APPROVED
PLAN.  WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE
DISTRICT OFFICE OR SUB OFFICE WITHIN 24 HOURS (MONDAY THROUGH FRIDAY) BETWEEN
THE HOURS OF 8:30 AM - 5:00 PM.

       Signed this 27th day of     April, 1995 at Harrisburg, PA

PENNSYLVANIA BOARD OF PROBATION AND PAROLE

Board Chairman

PPB11 (rev 03/90)                                                    Page 2 of 2 Pages

To: BRADY DAVIS                 Parole No. 1362V        InstNo: BX3685

7. SPECIAL CONDITIONS:

CO2
YOU MUST ABIDE BY ALL OF THE SUPERVISION REQUIREMENTS IN THE INTENSIVE
SUPERVISION DIVERSION RELEASE PROGRAM.
UPON YOUR RELEASE, AN EVALUATION/DETERMINATION WILL BE MADE AS TO YOUR NEED FOR
OUT-PATIENT DRUG AND ALCOHOL TREATMENT.
YOU WILL FOLLOW ALL TREATMENT RECOMMENDATIONS AND INSTRUCTIONS OF THE
TREATMENT AND/OR PAROLE SUPERVISION STAFF. YOU WILL BE REQUIRED TO SIGN THE
APPROPRIATE RELEASE FORM FOR CONFIDENTIAL INFORMATION.
YOU ARE REQUIRED TO SUBMIT TO URINALYSIS TESTING AND YOU MUST PAY FOR THE
COSTS OF THE TESTS (ACT 97-2).
YOU MUST NOT CONSUME ALCOHOL UNDER ANY CONDITION OR FOR ANY REASON.
YOU MUST MAINTAIN EMPLOYMENT AS APPROVED BY PAROLE SUPERVISION STAFF.
YOU SHALL PAY A MONTHLY SUPERVISION FEE OF $25.00 TO THE PAROLE BOARD WHEN
UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

_____                    _____
Signature of Parolee                       Witness

_____                    _____
Date                                       Witness

Note: If signed by mark, there must be
two witnesses to the execution of the

**EXHIBIT I**



**COMMONWEALTH OF PENNSYLVANIA**
**BOARD OF PROBATION AND PAROLE**

Office of Chief Counsel
1101 South Front Street, Suite 5100
Harrisburg, PA 17104-2517
(717) 787-8126

BRADY DAVIS, BX-3685
1 KELLEY DRIVE
COAL TOWNSHIP, PA 17866-1021

Re: Parole No. 1362-V

Dear Mr. Davis:

This determination answers an administrative appeal the Board received February 18, 2000, that may object to a revocation decision mailed August 12, 1998, to a recalculation order mailed May 3, 1999, and to a decision recorded September 14, 1999, that refused you reparole.

The administrative appeal was not received within 30 days of the mailing dates of the revocation decision or the recalculation order and therefore must be dismissed as untimely. *Maldonado v. Pennsylvania Board of Probation and Parole*, 492 A.2d 1202 (Pa. Cmwlth. 1985). Moreover, you previously filed an administrative appeal of the revocation decision on October 7, 1998. Therefore, to the extent the administrative appeal objects to the revocation decision, it must also be dismissed as an unauthorized second administrative appeal. To the extent the administrative appeal objects to the decision that refused you reparole, reparole refusals are not subject to the Board's administrative appeal process. Moreover, reparole refusals are not subject to appellate review. *Rogers v. Pennsylvania Board of Probation and Parole*, 724 A.2d 319 (Pa. 1999).

Purely for your information, you did serve your new 23-month sentence to the Montgomery County Correctional Facility before you resumed service of your original 7-year sentence to a state prison, and you were reentered to resume service of your original 7-year sentence to a state prison after you were paroled from your new 23-month sentence to the Montgomery County Correctional Facility on March 3, 1999. Credit for the time you spent in a state prison from your arrest on the Board's warrant on May 4, 1998, to your return to the Montgomery County Correctional Facility on October 8, 1998, has been applied to your original sentence pursuant to an agreement negotiated by your attorney. The revocation decision was not nullified because of any delay in returning you to the Montgomery County Correctional Facility to serve your new 23-month sentence. *Henderson v. Board of Probation and Parole*, 5 Pa. Cmwlth. 8 (1972); *Commonwealth ex rel. Cooper v. Banmiller*, 165 A.2d 397 (Pa. Super. 1960); *Commonwealth ex rel. Miller v. Myers*, 149 A.2d 507 (Pa. Super. 1959); *Commonwealth ex rel. Salerno v. Banmiller*, 149 A.2d 501 (Pa. Super. 1959); *Commonwealth ex rel. Tobin v. Cavell*, 183 Pa. Super. 365, 132 A.2d 362 (Pa. Super. 1957); *Commonwealth ex rel. Westwood v. Gackenbach*, 84 A.2d 380 (Pa. Super. 1951). The revocation decision was not nullified because the Board did not recalculate your maximum term expiry before your original maximum term expiry had passed. The Board could not recalculate your maximum term expiry until you were released from your sentence to the Montgomery County Correctional Facility, which had to be served before your recommittal on your original sentence to a state prison. *Woodward v. Pennsylvania Board of Probation and Parole*, 582 A.2d 1144 (Pa. Cmwlth. 1990).

Accordingly, the administrative appeal is dismissed as untimely and as unauthorized.

Sincerely,

Arthur R. Thomas
Assistant Counsel

DATE MAILED:    **MAY 0 1 2000**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRADY L. DAVIS,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:CV-00-00-0543** |
| **v.** | : | |
| | : | **(JURY TRIAL DEMANDED)** |
| **FRANK GILLIS, RAYMOND W.** | : | |
| **REEDER, BRIAN STOUT, WILLIAM** | : | **(Judge Rambo)** |
| **WARD, LEE GROVER, CHARLES** | : | |
| **CUSTER and WILMA SEWELL,** | : | |
| **Defendants** | : | |

## CERTIFICATE OF SERVICE

I, Michael A. Farnan, Deputy Attorney General for the Commonwealth of Pennsylvania, hereby certify that on September 15, 2000, I served a true and correct copy of the foregoing Appendix, by causing it to be deposited in the United States Mail, first-class postage prepaid to the following:

> Brady L. Davis, BX-3685
> SCI - Coal Township
> 1 Kelley Drive
> Coal Township, PA  17866

MICHAEL A. FARNAN
Deputy Attorney General