UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRADY L. DAVIS, : CIVIL NO. 1:CV-00-0543
    Plaintiff :
    v. :
FRANK GILLIS, et al., : (Judge Rambo)
    Defendants :

FILED
HARRISBURG, PA
MAR 0 7 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## MEMORANDUM

### Background

    This is a civil rights action filed under 42 U.S.C. § 1983[1] by Brady L. Davis, an inmate at the State Correctional Institution, Coal Township, Pennsylvania ("SCI-Coal Township"). The filing fee has been paid. The named Defendants are Superintendent Frank Gillis, Medical Administrator Wilma Sewell, Unit Manager Lee Grover, Counselor C. Custer, Parole Board Chairman William Ward, Parole Supervisor Brian Stout, Records Supervisor Raymond W. Reeder, and Joseph Kort, M.D.

    Davis alleges a violation of his Eighth and Fourteenth Amendment rights. He claims that when he returned to SCI-Coal Township as a parole violator he was placed in administrative custody for thirty days and that Defendants have held him past his maximum release date in violation of the due process clause. He further claims that Defendants provided inadequate medical treatment in violation of the Eighth Amendment. (Doc. No. 1, Complaint.)

---

1. To the extent that Davis also attempts to state a cause of action pursuant to 42 U.S.C. §§ 1981, 1985 and 1986, the Court finds his complaint devoid of any factual allegations necessary to support an action filed pursuant to any these sections.

Presently pending before the Court are Defendants' motions to dismiss. (Doc. Nos. 7 & 12.) Although Davis was advised by standing practice order dated March 28, 2000, of the procedures to be followed in responding to motions filed in this case, and the consequences of failing to do so, (Doc. No. 2), Davis has neither filed a brief in opposition to Defendants' motions to dismiss nor requested an extension of time within which to do so. Thus, Davis has failed to properly oppose Defendants' motion to dismiss. See M.D. Pa. Local Rule 7.6.

**DISCUSSION**

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be

2

drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). Finally, pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). This court will now discuss Defendants' motions in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Plaintiff's first claim involves being detained past his maximum release date. Specifically, Davis alleges that on May 16, 1998 he was returned to SCI-Coal Township as a parole violator to serve nine (9) months. He claims that there was "information in [his] file that [he] was to do 6 to 23 months work release at Montgomery County to start on May 19, 1998; however, Coal Township ignored that fact and held [him] until [his] max had expired which was on 10-3-98". On October 6, 1998, Davis was sent to Montgomery County to finish serving his "(9) month hit". He states that when his "time at Montgomery County was over, they brought [him] back into the State system and did not see [him] for (6) months, which is now (16) months or (7) months over the (9) month hit". (Doc. No. 1, Complaint, ¶¶ 12 - 16.)

He further alleges that "to add to the abuse Coal Township gave [him] a negative recommendation saying [he] was argumentative because the State Representative and [his] family were calling the institution showing concern about [him] being staffed, because a parolee is supposed to be staffed 3 or 4 months before their minimum and [Plaintiff] was (7) months past [his] maximum". (Id. at ¶ 17.)

On September 14, 1999, Davis states that he was seen by the Pennsylvania Board of Probation and Parole who "unbelievably gave [him] a

3

12 month hit, with no explanation for it except that [he] was a danger to society". (Id. at ¶ 18.) For relief, Plaintiff seeks punitive damages only.

First, it is clear that a plaintiff cannot file a § 1983 complaint to challenge the fact or duration of his confinement. Preiser v. Rodriguez, 411 U.S. 475 (1973). Furthermore, there is no indication that the Plaintiff has exhausted his available state remedies with respect the parole revocation and denial of reparole. See 28 U.S.C. §§ 2254(b) and (c); Rose v. Lundy, 455 U.S. 509, 515-20 (1982); Toulson v. Beyer, 987 F.2d 984 (3d Cir. 1993); Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986).

Moreover, all decisions regarding parole, including revocation and rescheduling of parole eligibility hearings, are at the discretion of the parole board. 61 Pa.C.S.A. §§ 331.21 and 331.22; McCrery v. Mark, 823 F. Supp. 288, 294 (E.D. Pa. 1993); Wright v. Cuyler, 517 F. Supp. 637 (E.D. Pa. 1981). See also Johnson v. Pennsylvania Board of Probation and Parole, 110 Pa. Commonwealth Ct. 142, 532 a.2d 50 (1987). Also, in Lott v. Arroyo, 785 F. Supp. 508 (E.D. Pa. 1991), it was similarly held that inmates do not have a "legally protected interest in pre-release status" under Pennsylvania state law or regulations. See also Reider v. Commonwealth of PA, 502 A.2d 272 (PA Cmwlth. 1985) (finding that the denial of pre-release status to inmate who met all minimum criteria for participation was not a due process violation).

Finally, the United States Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed

4

on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S.477 (1994). It has been recognized that "[b]ecause an action attacking the validity of parole proceedings calls into question the fact and duration of confinement, it must satisfy the Heck element." McGrew v. Texas Board of Pardons & Paroles, 47 F.3d 158, 161 (5th Cir. 1995). See also Jackson v. Vannoy, 49 F.3d 175, 177 (5th Cir. 1995) (applying Heck to challenges to revocation of parole). Because there has been no prior adjudication pertaining to the validity of the decision to revoke Davis's parole, his continued incarceration, or his subsequent denial of reparole, it is appropriate to dismiss the claim for damages. Plaintiff can not, under Heck, maintain a cause of action for unlawful imprisonment until the basis for that imprisonment -- in this case revocation of parole and denial of reparole -- is rendered invalid.

Davis next claims that when he returned to SCI-Coal Township on May 20, 1999 to serve the remainder of his parole violation, he had to spend 30 days in administrative custody because there were no beds available in general population. (Doc. No. 1, Complaint ¶ 20). Plaintiff seeks punitive damages for the "isolation [he] suffered" in violation of his Eighth and Fourteenth Amendment rights. (Id. at p. 9, Relief Requested ¶ A.)

Davis' final claim involves his disagreement with medical treatment he received for diabetes in May and June 1999 and January 2000. (Doc. No. 1, Complaint ¶¶ 22-37.) Specifically, Davis states that when he was returned to SCI-Coal Township on May 20, 1999, he did not receive his insulin for two days. On May 23, 1999, he states that "the doctor instructed

5

the nurse to discontinue [his] evening insulin" without "examining [him] or checking [his] sugar level to know if it was alright to stop [his] evening insulin." (Id. at ¶¶ 23-25.)

Plaintiff claims that on June 2, 1999, he was "refused his lunch bag, which is a part of [his] diabetic treatment". On June 3, 1999, at 11:30 p.m., Davis claims he "was taken to the dispensary because [he] was not receiving [his] medication." Davis was kept there for observation. He alleges that the next morning Defendant Dr. Kort "came to see him and said he was not going to give [Plaintiff] [his] proper insulin until [he] got out of the hole." (Id. at ¶¶ 27, 28.) On June 8, 1999, Davis spoke to a doctor concerning headaches he was experiencing. He claims that the doctor said he was going to speak to Dr. Kort about [Plaintiff's] evening insulin. However, "no one ever came back to see [Plaintiff]." (Id. at ¶ 29.) Finally, Davis claims that when he was in the dispensary on June 23, 1999, he explained to Dr. Kort that he needed his evening insulin and that Dr. Kort replied "I will teach you what being a diabetic will do to you." (Id. at ¶¶ 33.)

On January 29, 2000, Davis claims that he became ill and could not eat. He pushed the emergency button, and a nurse came to see him. He explained that he was experiencing nausea and was "seeing crystal element". He told that nurse that he had experienced this once before and it was his blood pressure, however, "she would not check it". Instead she checked Davis's sugar, which was fine. Davis states that she gave him two aspirins and suggested that he put in a sick call slip. He paid her for the visit and she left. The next day a doctor came to see him. Davis explained the symptoms he was experiencing, however, the doctor said "he could not see [Plaintiff] unless [he] paid him." Davis claims the after he "explained that he

6

had just paid the nurse for the same illness the night before, the doctor just left." (Id. at ¶ 35.)

On January 31, 2000, Davis's illness was worse. He again called for emergency care and "asked them to bring the blood pressure equipment." Plaintiff's pressure was high. He was instructed to submit another sick call slip, which he did. Davis was seen by "a different doctor on 2-1-2000, who increased [his] medication." Davis claims that he was "ill for 4 days because the medical department would not give [him] the proper medical attention." (Id. at ¶ 36.)

Davis also claims that because of his diabetes, he needs "an accu-check, preferably daily" however, the doctor only gives him one "once a month and when [he] requests one" and then "he charges [Plaintiff] for it, although [Plaintiff] is a chronic patient." Davis alleges that "the state's rule is if you are a chronic patient, you do not have to pay for medical service, if it relates to your chronic illness." He states that all the institutions the he has been in have given him an "accu-check twice a day." (Id.)

Defendants contend in their motions to dismiss that Davis's claims should be dismissed for failure to exhaust available administrative remedies. In support of their argument Defendants submit a copy of the Inmate Grievance Tracking System for grievances filed by Brady Davis from May 1, 1999 through August 25, 2000. (Doc. No. 15, Exhibit 4.) Davis filed six grievances for this time period; three concerning harassment, one for mail, one concerning property and one concerning medical treatment. (Id.)

On May 22, 1999, Davis filed Grievance Number COA-0232-99 regarding his medical treatment for diabetes. (See Doc. No. 1, Complaint, p. 14, copy of grievance.) On June 6, 1999, the reasons for Davis's medical

7

treatment were explained to him in a response to his grievance. (Id. at p. 16, copy of Official Inmate Grievance Initial Review Response.) Plaintiff did not appeal the response to a higher level. (Doc. No. 15, Exhibit 6, Affidavit of Robert Bitner, Chief Hearing Examiner for the Pennsylvania Department of Corrections.) Nor has Plaintiff exhausted any grievance for being housed in the Restricted Housing Unit in May or June, 1999.[2] (Id. at ¶ 6.)

Section 1997e(a) of Title 42 U.S.C., added by the Prison Litigation Reform Act (PLRA), Pub.L.No. 104-134, 110 Stat. 1321 (April 26, 1996), provides as follows:

> No action shall be brought <u>with respect to prison conditions</u> under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. [Emphasis added.]

In Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit held that the exhaustion requirement is mandatory whether or not the administrative remedies afford the inmate-plaintiff the relief sought in the federal court action. In Nyhuis, the inmate complained that federal prison officials had wrongfully confiscated some of his personal property. As in this case, the inmate sought damages, and the inmate had not pursued the available administrative remedies. Chief Judge

---

2. The Court notes the even if Plaintiff had exhausted his administrative remedies regarding this claim, such a claim lacks merit in light of the Supreme Court's ruling in Sandin v. Connor, 515 U.S. 472, 484 (1995)(holding that a prisoner's assignment to disciplinary segregation did not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life) and the Third Circuit's holding in Griffin v. Vaughn, 112 F.3d 703, (3d Cir. 1997)(holding that an inmate's commitment to and confinement in administrative custody did not deprive him of a liberty interest; that he was not entitled to procedural due process protection; and that prolonged confinement in administrative custody was not cruel and unusual punishment.)

Becker, writing for the unanimous panel, declared that administrative remedies must be exhausted even though the prisoner could not obtain in the administrative process the monetary relief he sought in federal court.

The Pennsylvania Department of Corrections has a Consolidated Inmate Grievance Review System. DC-ADM 804, effective October 20, 1994. With certain exceptions not applicable here, DC-ADM 804, Section VI ("Procedures") provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Grievance Coordinator; an appeal from the Coordinator's decision may be made in writing to the Facility Manager or Community Corrections Regional Director; and a final written appeal may be presented to the Chief Hearing Examiner.

Effective May 1, 1998, the Department of Corrections amended DC-ADM 804 to provide that a prisoner, in seeking review through the grievance system, may include requests for "compensation or other legal relief normally available from a court." DC-ADM 804-4, issued April 29, 1998. Further, the amendment requires that the [g]rievances must be submitted for initial review to the Facility/Regional grievance Coordinator within fifteen (15) days after the events upon which the claims are based," but allows for extensions of time for good cause, which "will normally be granted if the events complained of would state a claim of a violation of a federal right." Id.

Davis makes no indication that he has pursued the above administrative remedies, nor does he provide any acceptable basis upon which to excuse compliance with the exhaustion requirement. In attempt to refute Defendants' argument, Davis submits a document entitled "Affidavit of Exhaustion of Administrative Remedies," in which he states that he "has filed

9

with the Department of Corrections his final appeal with the medical issues as to his mistreatment by the part defendants of record". (Doc. No. 18, Affidavit.) Attached to this document is a letter dated October 24, 2000, from the Department of Corrections, indicating that Davis' appeal regarding Grievance No. COA-0533-00 has been denied by final review. (Id.)

The Court finds this document unpersuasive in that it concerns a different grievance number than that of the one Davis filed before commencing his federal action. Obviously Davis filed this grievance after initiating the instant action. Exhaustion of administrative remedies, however, must occur prior to filing an action in federal court. Nyhuis v. Reno, 204 F.3d at 67; Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998), cert. denied, 526 U.S. 1133 (1999); Hassine v. Horn, Civ.No. 4:CV-97-1621, slip op. at 10-12 (M.D. Pa. Sept. 29, 1998)(Muir, J.).

Thus, in light of Davis' failure to satisfy § 1997e(a), dismissal of his remaining claims, without prejudice, is warranted. See Johnson v. Fischi, Civil No. 3:CV-00-0042 (M.D. Pa. February 24, 2000)(Vanaskie, C.J.); Bradley v. Morgan, Civil No. 1:CV-98-0210 (M.D. Pa. February 18, 1998)(Caldwell, J.). An appropriate Order is attached.

/s/ SYLVIA H. RAMBO
United States District Judge

Dated: March 7, 2001.
SR:dlb

10

```
              UNITED STATES DISTRICT COURT
                       FOR THE
              MIDDLE DISTRICT OF PENNSYLVANIA

              * * MAILING CERTIFICATE OF CLERK * *

                       March 7, 2001


    Re:  1:00-cv-00543     Davis v. Gillis



    True and correct copies of the attached were mailed by the clerk
    to the following:


         Brady L. Davis
         SCI-COAL
         BX3685
         SCI Coal Township
         1 Kelley Drive
         Coal Township, PA  17866-1020

         Linda S. Lloyd, Esq.
         Office of Attorney General
         15th Floor
         Strawberry Square
         Harrisburg, PA  17120

         Alan S. Gold, Esq.
         Monaghan & Gold, P.C.
         7837 Old York Road
         Elkins Park, PA  19027




cc:
Judge                        (X )           (X ) Pro Se Law Clerk
Magistrate Judge             (  )           (  ) INS
U.S. Marshal                 (  )           (  ) Jury Clerk
Probation                    (  )
U.S. Attorney                (  )
Atty. for Deft.              (  )
Defendant                    (  )
Warden                       (  )
Bureau of Prisons            (  )
Ct Reporter                  (  )
Ctroom Deputy                (  )
Orig-Security                (X )
Federal Public Defender      (  )
Summons Issued               (  ) with N/C attached to complt. and served by:
                                  U.S. Marshal (  )    Pltf's Attorney (  )
Standard Order 93-5          (  )
Order to Show Cause          (  ) with Petition attached & mailed certified mail
                                  to:  US Atty Gen   (  )    PA Atty Gen (  )
```

```
Bankruptcy Court        ( )         DA of County  ( )   Respondents ( )
Other_____( )
                                              MARY E. D'ANDREA, Clerk


    DATE: March 7th, 2001              BY: _____
                                              Deputy Clerk
```